**Ex parte Charles Anthony TAYLOR.**

No. 72512.

Court of Criminal Appeals of Texas.

Nov. 26, 1997.

Charles Anthony Taylor, Teague, for appellant.

Jonathan Stick, Asst. Dist. Atty., Matthew Paul, State's Atty., Austin, for State.

## *OPINION*

PER CURIAM.

This is a post-conviction application for a writ of habeas corpus filed in accord with Article 11.07, V.A.C.C.P. A jury convicted

Applicant of attempted murder and assessed punishment at confinement for sixteen and one-half years and a $5,000 fine. The conviction was affirmed. *Taylor v. State,* No. 03–88–014–CR (Tex.App.—Austin, delivered March 8, 1989, pet. ref'd).

Applicant contends that his mandatory supervision was improperly revoked for several reasons, including that he was denied appointment of counsel to represent him at the final revocation hearing and that he was denied his right to confront witnesses at that hearing.[1] The record shows that Applicant's parole[2] was revoked on the basis of testimony from his wife, Olivia Taylor, which was taken outside of Applicant's presence. Applicant's objection to his wife and her daughter testifying outside his presence was overruled based on the hearing officer's determination that the level of fear demonstrated by these witnesses constituted good cause to take their testimony outside of Applicant's presence. This case was filed and set to address the issues of denial of counsel and good cause to limit Applicant's right to cross-examination and confrontation. We turn first to the confrontation issue.

The hearing officer's report states that Olivia Taylor was trembling and crying when she was brought into the room with Applicant, and she said her daughter was also fearful. As a result, Applicant was placed outside the hearing room during their testimony, which was recorded. After their testimony, the hearing officer played the recorded testimony for Applicant and permitted him to formulate questions for the hearing officer to pose to Olivia and her daughter. Other evidence presented at the hearing included Applicant's denial of all the allegations, his acquittal of one of the alleged assaults, a dismissal of another case, and several letters from family and friends stating that Applicant was a good person. Additionally, evidence included an affidavit from Olivia detailing Applicant's alleged assaults, Olivia's medical report showing some signs of injury to her head and a hearing

loss in one ear several weeks after one alleged assault by Applicant, several letters stating that Olivia was of good character, and a letter from Olivia's mother indicating Applicant had threatened Olivia's daughter and that she thought Applicant was dangerous and crazy. The record also contained a copy of a protective order prohibiting Applicant from going near or threatening Olivia.

## CONFRONTATION

■ The United States Supreme Court has held that a parolee who allegedly violated a condition of his parole is entitled to due process before a decision to revoke that parole may validly be made, so that "the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." *Morrissey v. Brewer,* 408 U.S. 471, 484, 92 S.Ct. 2593, 2602, 33 L.Ed.2d 484, 496 (1972). The procedures set out in *Morrissey* were designed to ensure a fair resolution of whether the parolee violated a condition of his release and, if so, whether that parole should be revoked. The Supreme Court emphasized that "there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Id.,* 408 U.S. at 489, 92 S.Ct. at 2604, 33 L.Ed.2d at 499. These procedures include a final hearing at which the parolee has a "right to confront and cross-examine adverse witnesses unless the hearing officer specifically finds good cause for not allowing confrontation." *Ibid.*

■ The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." This provision guarantees the accused a face-to-face meeting with witnesses appearing before the trier of fact in a criminal trial.

1. This claim may be raised under Art. 11.07. See *Ex parte Woodward,* 619 S.W.2d 179 (Tex.Cr. App.1981).

2. For convenience we will refer to persons conditionally released from confinement as "parolees," and their release as "parole," whether that release relates to parole, mandatory supervision, or conditional pardon.

In *Morrissey* the Supreme Court decided this right of confrontation, although limited if good cause was shown, was applicable in parole revocation hearings through the vehicle of the Due Process Clause since the Sixth Amendment itself applies only to criminal prosecutions, which a parole hearing is not. The main purpose of confrontation is to enhance the accuracy of factfinding by subjecting a witness to rigorous testing before the trier of fact, thus ensuring reliability by the physical presence of the witness, the oath, cross-examination, and observation of demeanor by the trier of fact. See *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). However, even in the most protected arena for the Sixth Amendment right to confrontation, the criminal trial, the right is not absolute. In *Craig* the Supreme Court discussed the limitations on confrontation in the trial setting, noting that while face-to-face encounters are preferred, they are not required in every instance in which testimony is admitted against a defendant. For example, hearsay exceptions balance the right to confrontation against societal interest in factfinding by requiring that such exceptions be reliable.

In *Craig* the Court upheld a procedure in which the child witness, prosecutor, and defense counsel went to a separate room where the child witness was examined and cross-examined while a one-way closed circuit television recorded and displayed the witness' testimony to the judge, jury, defendant, and others in the courtroom. The Court noted that this procedure preserved all the elements of the confrontation right except the actual face-to-face confrontation between the witness and the defendant. The Court held that when it is "necessary to protect a child witness from trauma that would be caused by testifying in the physical presence of the defendant, at least where such trauma would impair the child's ability to communicate, the Confrontation Clause does not prohibit use of a procedure" that ensures reliability by subjecting the evidence to rigorous adversarial testing. *Id.* at 857, 110 S.Ct. at 3170, 111 L.Ed.2d at 686. The necessity showing and the state interest justified the special procedure used, which "adequately ensures the accuracy of the testimony and preserves the adversary nature of the trial." *Id.* at 857, 110 S.Ct. at 3169, 111 L.Ed.2d at 686.

*Craig* demonstrates limitations on confrontation in the most protected area of criminal law—the criminal trial. Parole revocation proceedings are a much lesser protected arena and start with the premise, contrary to that in criminal trials, that the right to confrontation may be limited if good cause is shown. Mindful of the flexibility in due process procedures emphasized in *Morrissey* and the more limited right of confrontation, we examine parole revocation proceedings, bearing in mind the procedure must sufficiently ensure the reliability of the evidence.

In *Morrissey* the Court did not elaborate on what might constitute "good cause" or how to evaluate it and this Court has not addressed the issue. However, *Craig* is instructive because the necessity finding in *Craig* is similar to the "good cause" finding required for parole revocation proceedings, bearing in mind the lower threshold of protection given the parolee's right to confrontation and the flexibility emphasized in *Morrissey*. In *Craig* the Court evaluated the procedures used by first deciding if there existed a necessity for special procedures to further an important state interest. The necessity requirement in *Craig* was met by showing that the trauma from testifying in the defendant's presence would impair the child's ability to communicate. This standard was based on the Maryland statute, and the Court noted that it need not decide what the minimum showing of emotional trauma would be required to use special procedures because the Maryland statute "clearly suffices to meet constitutional standards." *Craig*, 497 U.S. at 856, 110 S.Ct. at 3169, 111 L.Ed.2d at 685.

■ A parole revocation hearing is not the same as a criminal prosecution in terms of confrontation rights and due process. *Morrissey*, supra. Thus, while the Maryland statute required impairment of the child's ability to communicate caused by the trauma in confronting the particular defendant, the Supreme Court indicated that was not the minimum standard even for criminal trials. Parole revocation procedures clearly need

not rise to that level of necessity for a good cause showing. Good cause is shown to deny confrontation rights when (1) after looking at the witness and the State's interest, there is a need for the particular witness to testify out of the parolee's presence and (2) the procedures used adequately ensure the reliability of the evidence.

Federal appellate courts have employed a similar balancing test to determine whether good cause exists to disallow cross-examination and confrontation in parole revocation hearings. These courts have weighed the parolee's interest in cross-examining and confronting a witness against the government's interest in not having to produce that witness, particularly focusing on the indicia of reliability of the hearsay offered. See *United States v. McCormick*, 54 F.3d 214 (5th Cir.1995); *United States v. Pratt*, 52 F.3d 671 (7th Cir.1995); *United States v. Zentgraf*, 20 F.3d 906 (8th Cir.1994); *United States v. Penn*, 721 F.2d 762 (11th Cir.1983). Generally, this type of balancing must be considered on a case-by-case basis because the endless myriad of various facts which comprise a case do not lend themselves to easy categorization. Most of the federal cases involved use of laboratory reports, police reports, or parole reports and are not helpful in balancing the confrontation interests at issue in this case because they are so dissimilar. In those cases confrontation was completely denied. We found no cases involving a fact scenario like the instant case in which a key witness was present and a modified cross-examination and confrontation procedure was employed. Indeed, the procedure used in this case is more similar to procedures used in criminal prosecutions in which a witness, usually a child, is permitted to testify under special procedures. See *Craig*, supra.

This brings us to the facts of this case to conduct a balancing test to decide if good cause was shown to use special procedures which denied Applicant face-to-face confrontation because of the emotional trauma caused to his wife by testifying in Applicant's presence, and the state's interest in protecting her from such trauma.

Although medical reports substantiated Olivia's allegation concerning one of the assaults by Applicant, essentially the hearing was a credibility choice to be made between Applicant and his wife. In this setting the importance to Applicant of cross-examining and confronting Olivia is evident. She is the primary witness against him so her credibility is crucial. However, Applicant was able to cross-examine Olivia by asking questions which were relayed through the hearing officer, who also observed Olivia when she testified about the assaults and when she answered any questions posed by Applicant. Olivia was under oath and was physically present for the trier-of-fact to observe.

The State has an interest in protecting victims of domestic abuse from further trauma caused by testifying against the alleged perpetrator. When the victim-witness is an adult, the state's need to protect the witness from trauma is certainly not as great as for the child-witness. However, such victims often suffer emotional and psychological problems arising from their situation. The State certainly has an interest in protecting these victims from the trauma of testifying, if the reliability of the evidence can be ensured in a parole revocation hearing. The hearing officer did not expressly state whether Olivia's ability to communicate was impaired by the trauma of testifying in the same room with Applicant, but he obviously determined that the level of fear demonstrated by Olivia entitled her to special procedures for testifying. That determination was supported by the record describing that Olivia was trembling and crying when brought into Applicant's presence. Thus, one implication of his decision is that she would have a difficult time testifying.

█ Because the procedures and protections afforded a defendant in a parole revocation proceeding are *less* than those in a criminal trial, it is helpful to compare *Craig* with the present case. In *Craig,* the defendant was denied face-to-face confrontation. In this case, Applicant was also denied face-to-face confrontation, but was similarly accorded the right to cross-examine Olivia and to hear her testimony. Also, the hearing officer was present to view Olivia's demeanor as she

testified. These procedures were adequate to ensure the reliability of Olivia's testimony in line with the limited right of confrontation accorded Applicant in a parole revocation hearing. The hearing officer's determination that Olivia demonstrated a level of fear to justify special procedures constituted good cause when balancing Applicant's interest in cross-examining and confronting her, with the procedures used. This is not like *Belk v. Purkett*, 15 F.3d 803 (8th Cir.1994), in which the key witness was not present at all. See *Farrish v. Mississippi State Parole Bd.*, 836 F.2d 969 (5th Cir.1988). Nor is this a case in which hearsay was substituted for the testimony of the witness so that the parolee was completely denied cross-examination and confrontation. See *Farrish*, supra; *Belk*, supra. Here, Applicant was able to cross-examine Olivia, and hear her testimony. She was under oath and present for the hearing officer to see her and listen to her testimony. In sum, we conclude an adequate showing of good cause was made and when examined in light of the procedures used, ensured sufficient reliability as to accord Appellant due process.

### RIGHT TO COUNSEL

The hearing officer at Applicant's preliminary hearing submitted an affidavit that Parole Board policy provides that counsel will be provided for preliminary revocation hearings only if the inmate is indigent and either mentally impaired or physically disabled such that he cannot communicate effectively. An attorney will be appointed for a final revocation hearing if these conditions exist or if the allegations are of a complex nature such that the inmate needs assistance in gathering evidence or asking questions. The officer stated that Applicant had no problem understanding the allegations, all of which involved Applicant's wife, and Applicant could ably question witnesses and present evidence.

■ In *Gagnon v. Scarpelli*, 411 U.S. 778, 790, 93 S.Ct. 1756, 1763, 36 L.Ed.2d 656, 666 (1973), the Supreme Court held that a parolee is not absolutely entitled to appointed counsel at a revocation hearing, and "that the decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system." In reaching this decision, the Court focused on the nature of the parole revocation proceeding and the interests in flexibility, and emphasized that with some exception, "the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings." *Ibid.* When a parolee may have difficulty in presenting his version of a disputed set of facts or when the facts or mitigating circumstances are so complex that they can fairly be presented only by a trained advocate, counsel should be appointed in a parole revocation proceeding. "The need for counsel at revocation hearings derives, not from the invariable attributes of those hearings, but rather from the peculiarities of particular cases." *Id.* at 789, 93 S.Ct. at 1763, 36 L.Ed.2d at 666. Additionally, the Court discussed how the introduction of counsel into a revocation proceeding significantly alters the nature of the proceeding. The focus becomes more adversarial and the decisionmaking process will be prolonged, and the financial cost to the State can be substantial. "Due process is not so rigid as to require that the significant interest in informality, flexibility, and economy must always be sacrificed." *Id.* at 788, 93 S.Ct. at 1763, 36 L.Ed.2d at 665. The Court declined to set precise guidelines to decide when counsel should be appointed, but suggested that counsel should be provided in cases in which a parolee requests counsel "based on a timely and colorable claim that he has not committed the alleged violation of the conditions upon which he is at liberty." *Id.* at 790, 93 S.Ct. at 1764, 36 L.Ed.2d at 666.

■ Although in this case Applicant claimed that he had not committed the alleged seven separate incidents of threats and assaults on his wife, we believe he was not entitled to an appointed attorney to represent him at the revocation hearing. The facts were uncomplicated and straightforward. Olivia testified that Applicant assaulted and threatened her on various days. Applicant denied these allegations. Applicant was given the opportunity to cross-examine

Olivia and to testify in his behalf. The hearing officer for the revocation hearing had also presided over Applicant's preliminary hearing and was able to appraise Applicant's ability to understand, ask questions of witnesses, and present testimony. The officer concluded that Applicant was capable of asking meaningful questions, understanding the proceedings, and presenting witnesses, testimony, and evidence concerning the allegations.

After evaluating the relative simplicity of the disputed facts, Applicant's ability to speak effectively for himself, and the other considerations of the nature of the revocation hearing explained in *Gagnon*, we conclude that Applicant has not shown he was entitled to an appointed attorney. Accordingly, relief is *denied*.

OVERSTREET, J., concurs in result.