WR-83,995-01
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/12/2015 12:00:12 PM
Accepted 10/12/2015 12:01:00 PM
ABEL ACOSTA
CLERK

Nos. WR-83,995-01 and WR-83,995-02

IN THE COURT OF CRIMINAL APPEALS OF TEXAS, AT AUSTIN

RECEIVED
COURT OF CRIMINAL APPEALS
10/12/2015
ABEL ACOSTA, CLERK

**In re James Emil Tout**

Relator

# Application for Writs of Mandamus & Prohibition

Respectfully submitted by,

**Gary J. Cohen**
The Cohen Law Firm
9300 Research Blvd, Suite 300
Austin, Texas 78759-6553
garycohen@parolelaw.com
Tel. (512) 476-6201
Fax: (512) 477-5773
State Bar Card No. 04508300

| **David A. Schulman** | **John G. Jasuta** |
| --- | --- |
| Attorney at Law | Attorney at Law |
| zdrdavida@davidschulman.com | lawyer1@johnjasuta.com |
| State Bar Card No. 17833400 | State Bar No. 10592300 |

1801 East 51st Street, Suite 365-474
Austin, Texas 78723
Tel. 512-474-4747
Fax: 512-532-6282

Attorney for Relator

## Issue Presented

Whether an individual released on parole may be punished by the Parole Division ("the Division") of the Texas Department of Criminal Justice ("TDCJ"), and the Board of Pardons & Paroles ("the Board") solely for having exercised his rights under the Fifth and Fourteenth Amendments to the Constitution of the United States.

# Identity of Parties and Counsel

Pursuant to the Rules of Appellate Procedure ("Tex.R.App.Pro."), the following is a complete list of the names and addresses of all parties to this cause so the members of the Court may at once determine whether they are disqualified to serve or should recuse themselves from participating in the decision of the case:

## Relator

### James Emil Tout
TDCJ No. 1507933
West Texas Intermediate Sanctions Facility
2002 Lamesa Hwy.
Brownfield, Texas 79316

Represented by:

### Gary J. Cohen
The Cohen Law Firm
9300 Research Blvd, Suite 300
Austin, Texas 78759-6553
garycohen@parolelaw.com
Tel. (512) 476-6201
Fax: (512) 477-5773
State Bar Card No. 04508300

| **David A. Schulman** | **John G. Jasuta** |
|---|---|
| Attorney at Law | Attorney at Law |
| zdrdavida@davidschulman.com | lawyer1@johnjasuta.com |
| State Bar Card No. 17833400 | State Bar No. 10592300 |

1801 East 51st Street, Suite 365-474
Austin, Texas 78723
Tel. 512-474-4747
Fax: 512-532-6282

## Identity of Parties and Counsel

# Respondents

David Gutiérrez
Chairman
Board of Pardons & Paroles
Post Office Box 13401
Austin, Texas 78711-3401

Stuart Jenkins
Director
Parole Division of TDCJ
Post Office Box 13401
Austin, Texas 78711

Represented by:

Represented by:

Bettie Wells
General Counsel
Post Office Box 13401
Austin, Texas 78711-3401

Sharon Felfe Howell
General Counsel
Post Office Box 4004
Huntsville, Texas 77342

# Table of Contents

Issue Presented. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   i

Identity of Parties and Counsel. . . . . . . . . . . . . . . . . . . . . . .  ii

Index of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  v

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Argument & Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

    Relator Has No Adequate Remedy at Law. . . . . . . . . . . . .  4

    The Act Sought to Be Compelled is Purely Ministerial
    and Relator Has a Clear Right to Relief. . . . . . . . . . . . . .  7

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

Prayer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

Certificate of Compliance and Delivery. . . . . . . . . . . . . . . . . . .  21

# Index of Authorities

**Federal Cases**:

*Gagnon v. Scarpelli*, 411 U.S. 778 (1973). . . . . . . . . . . . . . 15

*Hoffman v. United States*, 341 U.S. 479 (1951). . . . . . . .  10, 17

*Lefkowitz v. Cunningham*, 431 U.S. 801 (1977).. . . . . . .  11, 17

*Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973). . . . . . . . . . .  9, 15

*Minnesota v. Murphy*, 465 U.S. 420 (1984).  . . . . . . . .  9, 10, 17

*Moore v. Commissioner of Internal Revenue*,
      722 F.2d 193 (5th Cir. 1984).  . . . . . . . . . . . . .  10, 11, 17

*Morrissey v. Brewer*, 408 U.S. 471 (1972).  . . . . . . . . . . . . . 8


**Texas Cases**:

*Banales v. Thirteenth Court of Appeals*,
      93 S.W.3d 33 (Tex.Cr.App. 2002).  . . . . . . . . . . . . . . . . . 3

*Bowen v. Carnes*, 343 S.W.3d 805 (Tex.Cr.App.  2011). . . . . . . 4

*Buntion v. Harmon*, 827 S.W.2d 945 (Tex.Cr.App. 1992). . . . 5

*Chapman v. State*, 115 S.W.3d 1 (Tex.Cr.App. 2003). . . . . . . 9

*Dansby State*, 448 S.W.3d 441 (Tex.Cr.App. 2014). . . . . . 2, 14

# Index of Authorities
## (CONT)

**Texas Cases** (CONT):

*Dansby v. State*, 05-10-00866-CR
(Tex.App. - Dallas; Apr. 9, 2012). . . . . . . . . . . . . . . . . . . 12

*Dansby v. State*, 05-10-00866-CR
(Tex.App. - Dallas; January 22, 2014) . . . . . . . . . . . . . . 13

*Dansby v. State*, 05-10-00866-CR
(Tex.App. - Dallas; June 15, 2015) . . . . . . . . . . . . . . . . . 14

*Dansby v. State*, 398 S.W.3d 233 (Tex.Cr.App. 2013). . . . . . 13

*Ex parte Arnone*, WR-60,218-02
(Tex.Cr.App. October 7, 2015). . . . . . . . . . . . . . . . . . . . . 9

*Ex parte Evans*, 964 S.W.2d 643 (Tex.Cr.App. 1998). . . . . . . 5

*Ex parte Taylor*, 957 S.W.2d 43 (Tex.Cr.App. 1997). . . . . . . 5

*Ex parte Woodward*, 619 S.W.2d 179 (Tex.Cr.App. 1981). . . 5

*In re Bonilla*, 424 S.W.3d 528 (Tex.Cr.App. 2014). . . . . . . . . 7

*In re McCann*, 422 S.W.3d 701 (Tex.Cr.App. 2013). . . . . . . . 4

*In re State ex rel. Weeks*,
391 S.W.3d 117 (Tex.Cr.App. 2013). . . . . . . . . . . . . . . 4, 7

*State ex rel Curry v. Gray*,
726 S.W.2d 125 (Tex.Cr.App. 1987). . . . . . . . . . . . . . . . . 7

# Index of Authorities
(CONT)

**Texas Cases** (CONT):

*State ex rel. Hill v. Fifth Court of Appeals*,
   34 S.W.3d 924 (Tex.Cr.App. 2001). . . . . . . . . . . . . . . . . . 3

*State ex rel. Holmes  v. Third Court of Appeals*,
   885 S.W.2d 389 (Tex.Cr.App. 1994). . . . . . . . . . . . . . . 4

*State ex rel. Lykos v. Fine*,
   330 S.W.3d 904 (Tex.Cr.App. 2011). . . . . . . . . . . . . . . . 4

*Stearnes v. Clinton*, 780 S.W.2d 216 (Tex.Cr.App. 1988). . . . 5

*Stotts v. Wisser*, 894 S.W.2d 366 (Tex.Cr.App. 1995). . . . . . . 4

*Texas Dept. Of Corrections v. Dalehite*,
   623 S.W.2d 420 (Tex.Cr.App. 1981). . . . . . . . . . . . . . 7, 8

## Constitution of the United States:

Fifth Amendment. . . . . . . . . . . . . . . . . . . . i, 2, 9, 12-15, 18

Fourteenth Amendment. . . . . . . . . . . . . . i, 2, 9, 12-15, 18

## Texas Statutes & Codes:

Code of Criminal Procedure

   Article 11.07 § 3, *et seq.*, C.Cr.P.. . . . . . . . . . 3, 5, 6, 17

vii

Nos. WR-83,995-01 and WR-83,995-02

IN THE COURT OF CRIMINAL APPEALS OF TEXAS, AT AUSTIN

**In re James Emil Tout**

Relator

<div style="background:#ccc">

## Application for Writs of Mandamus & Prohibition

</div>

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

COMES NOW, James Emil Tout ("Relator"), by and through his undersigned attorneys, Gary A. Cohen, John G. Jasuta, and David A. Schulman, complaining of the actions of the Division and the Board, and requesting that this Honorable Court issue its writs of mandamus and prohibition, directed to the said Respondents, and in support of such application would respectfully show the Court as follows:

### Statement of Facts

Relator was arrested in Williamson County for Driving While Intoxicated on March 15, 2008. He pled guilty and was sentenced to confinement for eight (8) years in the Texas Department of

1

Criminal Justice. Applicant was paroled on May 21, 2012, and, having previously been convicted of attempted sexual assault of a child, was placed on the "sex offender caseload."

In July of 2015, Applicant was provided with notice of a violation of the terms of his parole based on the invocation of his Fifth Amendment rights as regards a polygraph examination. On July 17, 2015, a hearing was conducted on the parole division's request to revoke parole. After being given a copy of the opinion in *Dansby v. State*, 448 S.W.3d 441 (Tex.Cr.App. 2014), and related opinions, the hearing officer found no violation and Applicant was released.

Almost immediately, Applicant was served with notice of another scheduled polygraph. He reported as required, but again invoked his Fifth Amendment right against self-incrimination. The parole division then sought, once again, to revoke Applicant's parole, to punish him for the invocation of his Fifth Amendment rights in regards to the polygraph examination.

2

Following a hearing on September 2, 2015, on the parole division's request to revoke Applicant's parole, the Board of Pardons and Paroles ordered that Applicant be confined in an intermediate sanctions facility ("ISF"). He is currently confined in the West Texas ISF in Brownfield, Texas.

On October 6, 2015, Relator filed a post-conviction Application for writ of *habeas corpus* under Article 11.07 § 3, *et seq.*, C.Cr.P. That application remains pending.

## Argument & Authorities

To demonstrate an entitlement to mandamus relief, a relator must demonstrate that he has "no adequate remedy at law" and "the act sought to be compelled [was] purely ministerial." ***State ex rel. Hill v. Fifth Court of Appeals***, 34 S.W.3d 924, 926-927 (Tex.Cr.App. 2001); ***Banales v. Thirteenth Court of Appeals***, 93 S.W.3d 33, 34 (Tex.Cr.App. 2002).

> [B]efore this Court will exercise its general mandamus power, we look to see whether applicants have an adequate remedy at law, and whether the act they seek to compel or prohibit is either purely ministerial, is to set aside an unauthorized order, or else is the only act discretion will allow under the law and the facts.

*State ex rel. Holmes  v. Third Court of Appeals*, 885 S.W.2d 389, 408 (Tex.Cr.App. 1994); see also, *Bowen v. Carnes*, 343 S.W.3d 805 (Tex.Cr.App. 2011).  Thus, in order to be entitled to mandamus relief, Relator must show two things:

❶ that he has no adequate remedy at law, and

❷ that what he seeks to compel is a ministerial act.

*In re State ex rel. Weeks*, 391 S.W.3d 117, 121-122 (Tex.Cr.App. 2013).  Similarly, prohibition relief is available only if the relator shows that he has a clear right to the relief sought and no other adequate legal remedy is available. See *In re McCann*, 422 S.W.3d 701, 704 (Tex.Cr.App. 2013); *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 907 (Tex.Cr.App. 2011).

## Relator Has No Adequate Remedy at Law

It is clear that the regular appellate process (i.e., "direct appeal") "does not provide an adequate remedy even if it results in a reversal and new trial." *Bowen*, 343 S.W.3d at 813; see also *Stotts v. Wisser*, 894 S.W.2d 366, 367 (Tex.Cr.App. 1995);

4

*Buntion v. Harmon*, 827 S.W.2d 945, 948 (Tex.Cr.App. 1992); *Stearnes v. Clinton*, 780 S.W.2d 216, 225 (Tex.Cr.App. 1988).

A post-conviction application for writ of *habeas corpus* under Art. 11.07 § 3, *et seq.*, C.Cr.P., is the only procedural mechanism for a person challenging confinement resulting from a final conviction. *Ex parte Woodward*, 619 S.W.2d 179 (Tex.Cr.App. 1981). Claims that an individual has been denied due process in the parole revocation process are cognizable in *habeas corpus* proceedings under Article 11.07, C.Cr.P. *Ex parte Evans*, 964 S.W.2d 643, 646-647 (Tex.Cr.App. 1998); *Ex parte Taylor*, 957 S.W.2d 43 (Tex.Cr.App. 1997).

Thus, the only "legal remedy" available to Relator by which he could challenge the legality of his current confinement would be an application for post-conviction writ of *habeas corpus* under Article 11.07, C.Cr.P. Like direct appeal, the "remedy" of post-conviction *habeas corpus*, Relator asserts, is not an adequate remedy within the meaning of the Court's case law.

Even presuming that the potential delay involved in litigation under Article 11.07, C.Cr.P., is insufficient to warrant the issuance of mandamus/prohibition writs, there is a more compelling reason. As is evidenced by this case, there is nothing in the parole procedures which protects Relator from having to relitigate these claims. Certainly the intent of both the division and the Board to continue their actions have been clearly shown in their continuing the unconstitutional demands for polygraph examinations in this case.[1]

Relator was forced to litigate the issue during his residency in Bell County. Despite his successful efforts in the parole revocation held on July 17, 2015, Relator was forced to relitigate the same issues in a revocation hearing on September 2, 2015.

Additionally, as the Court is well aware, unless and until there is a published opinion on a given issue, both the Division and the Board will continue to operate as if there was no such

---

[1] Relator has received anecdotal information indicating that there are hundreds of Texas parolees in the same circumstance as Relator.

6

opinion. Thus, the greater likelihood is that, even if Relator is successful in the current *habeas corpus* litigation, he may be forced to litigate the issue once again, unless the Division and the Board are expressly forbidden from renewing their unconstitutional efforts.

## The Act Sought to Be Compelled is Purely Ministerial and Relator Has a Clear Right to Relief

"An act is 'ministerial' if it constitutes a duty clearly fixed and required by law." *State ex rel Curry v. Gray*, 726 S.W.2d 125, 128 (Tex.Cr.App. 1987). It must be "accomplished without the exercise of discretion or judgment." *Gray*, 726 S.W.2d at 128.

The ministerial-act requirement is satisfied if the relator can show a clear right to the relief sought. *In re Bonilla*, 424 S.W.3d 528, 533 (Tex.Cr.App. 2014). "A clear right to relief is shown when the facts and circumstances dictate but one rational decision under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles." *Weeks*, 391 S.W.3d at 122; see also *Texas Dept. Of*

7

*Corrections v. Dalehite*, 623 S.W.2d 420, 424 (Tex.Cr.App. 1981)(an act is ministerial "where the law clearly spells out the duty to be performed . . . with such certainty that nothing is left to the exercise of discretion or judgment"). In the instant case, Relator has a clear right to relief.

That a parolee is entitled to due process in a parole revocation is without question. See *Morrissey v. Brewer*, 408 U.S. 471 (1972). Proceedings at a revocation hearing fall within the protection of the Due Process Clause of the Fourteenth Amendment. *Morrissey v. Brewer*, 408 U.S. at 482-483. Relator asserts that any sanction imposed solely because of the exercise of one's constitutional right to remain silent denies that person due process in violation of both *Morrissey v. Brewer* and the Fourteenth Amendment. In the instant case, Relator's rights to due process have been violated, because he has been deprived of his valuable liberty interest by being sent to an "Intermediate Sanction Facility" ("ISF") solely as punishment for his having exercised his constitutional right to remain silent.

8

The Fifth Amendment privilege against self-incrimination protects a person, including a person on community supervision, from being required to provide information that would tend to incriminate him. *Chapman v. State*, 115 S.W.3d 1, 5-6 (Tex.Cr.App. 2003).[2] "He may choose to remain silent rather than to respond to questions when the answers to those questions would tend to incriminate him." *Chapman*, 115 S.W.3d at 5. This privilege permits a person "not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Chapman*, 115 S.W.3d at 5, quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973).

The State may not require a defendant on community supervision "to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent."

---

[2] See also *Ex parte Arnone*, WR-60,218-02 (Tex.Cr.App. October 7, 2015)(not designated for publication)(slip op. at 2), in which the Court of Criminal Appeals vacated a more than 12 year old conviction because "the adjudication of Applicant's guilt was his dismissal from sex offender treatment which was based on failing two polygraph tests."

*Minnesota v. Murphy*, 465 U.S. 420, 436 (1984). There are two components to the exercise of the privilege against self-incrimination: risk of incrimination and compulsion to answer. See *Murphy*, 465 U.S. at 426. For there to be a risk of incrimination, "it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman v. United States*, 341 U.S. 479, 486-487 (1951).

The risk of incrimination exists if the person "has reasonable cause to apprehend danger from a direct answer." *Hoffman*, 341 U.S. at 486. The privilege extends to disclosures that would themselves support a conviction and "likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant . . .." *Hoffman*, 341 U.S. at 486. The privilege "applies only when the possibility of self-incrimination is a real danger, not a remote and speculative possibility . . .." *Moore v. Commissioner of Internal Revenue*, 722 F.2d 193, 195 (5th

10

Cir. 1984). The compulsion element is satisfied when the government threatens to inflict "potent sanctions" unless the privilege is surrendered, or when the government threatens to impose substantial penalties because a person elects to exercise the privilege. *Lefkowitz v. Cunningham*, 431 U.S. 801, 805 (1977).

Relative to the Court's inquiry is the case of Michael Edward Dansby, Sr. In 2008, he pled guilty to the offense of indecency with a child based on a 2005 assault on his granddaughter. The trial court placed Dansby on five years of deferred-adjudication community supervision and order him to comply with "sex offender terms and conditions."

Dansby complied with the vast majority, if not all, of the requirements of his community supervision, except that he refused to answer questions about his victims other than the complainant in this case. Based on this refusal, he was determined to have failed to participate fully in his treatment.

In August 2009, the State filed a motion to revoke Dansby's community supervision, and, based on his refusal to submit to the polygraph examination as required, the trial court adjudicated Dansby's guilt. At the sentencing hearing, appellant acknowledged that he understood that the modified conditions required him to take and pass a polygraph examination as to his sexual history, but he did not concede that he had agreed to forfeit his Fifth Amendment rights. After revoking his community supervision, the trial court sentenced appellant to eighteen years' imprisonment.

On direct appeal, the Court of Appeals determined that the trial court's revocation of Dansby's community supervision was premised on reasons other than his invocation of the Fifth Amendment, and it did not reach the merits of his Fifth Amendment challenge. *Dansby v. State*, 05-10-00866-CR (Tex.App. - Dallas; Apr. 9, 2012)("*Dansby I*")(not designated for publication). The Court of Criminal Appeals reversed the judgment of the Court of Appeals, however, holding that the Court of Appeals had erred by concluding that Dansby's discharge from

12

the sex offender treatment program was not a product of his invocation of his Fifth Amendment privilege. ***Dansby v. State***, 398 S.W.3d 233, 239, 242-243 (Tex.Cr.App. 2013)("***Dansby II***").

On remand, the Court of Appeals held that, because Dansby did not object to the specific conditions of community supervision at the time they were imposed or at any time prior to the filing of the State's motion to adjudicate, he forfeited his complaint that the conditions violated his constitutional rights under the Fifth Amendment. ***Dansby v. State***, 05-10-00866-CR (Tex.App. - Dallas; January 22, 2014)("***Dansby III***")(not designated for publication).

Dansby again sought discretionary review, challenging the Court of Appeals' opinion on remand by asserting that he lacked notice that the trial court's conditions of community supervision would require him to abandon his Fifth Amendment constitutional right. The Court of Criminal Appeals granted Dansby's petition and again disagreed with the Court of Appeals' analysis. The Court determined that Dansby "was not placed on fair notice that

13

he would be required to waive his Fifth Amendment right as part of" the conditions of community supervision. The court concluded that Dansby "did not forfeit his complaint that his Fifth Amendment rights were violated by his refusal to answer questions during sex-offender counseling and a polygraph examination about sexual-assault victims other than the complainant in this case." *Dansby v. State*, 448 S.W.3d 441, 452 (Tex.Cr.App. 2014)("*Dansby IV*").

On second remand, the Court of Appeals found that the revocation of Dansby's community supervision and the adjudication of his guilt were the direct result of the violation of his Fifth Amendment privilege not to provide information that could be used to prosecute him. *Dansby v. State*, 05-10-00866-CR (Tex.App. - Dallas; June 15, 2015)("*Dansby V*"). Ultimately, the Court of Appeals held that Dansby's term of deferred adjudication community supervision had to be reinstated. *Dansby V*, slip op. at 15.

Based on the above and foregoing state and federal cases, it is clear that a probationer has a right, under the Fifth and Fourteenth Amendments to the Constitution of the United States not be compelled to submit to a polygraph examination, when to do so will require him to waive his asserted right against self-incrimination. More specifically, a probationer retains the privilege enjoyed by all citizens to refuse "to answer official questions put to him in any . . . proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Turley*, 414 U.S. 70 at 77. Accordingly, the next question is whether a parolee has the same rights under the Fifth and Fourteenth Amendments to the Constitution of the United States as a probationer.

Relator asserts that there is no difference between the parole and probation revocation processes, as participants in both processes enjoy a protectible liberty interest, safeguarded by the Due Process Clause. *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). Consequently, although on parole rather than probation,

15

Relator retained his constitutional right against self-incrimination. Further, Relator would show that a State's efforts to require participation in polygraph testing constitutes impermissible compulsion.

There are two important factors the Court should consider. First, prior to the action of the Parole Division and the Parole Board about which complaint is made, although "confined" in the legal sense of being on parole, Relator was not physically confined. He lived in the "free world," albeit with the restrictions of being on parole and the sex offender caseload. Relator has now been deprived of his liberty and is physically confined in a TDCJ facility nearly 400 miles away from where he was residing when the events relevant to this litigation occurred. Second, the action taken by the Parole Division and the Parole Board is, and was designed "to punish, rehabilitate or reform an offender," in response to his failure to submit to the polygraph examination.[3]

---

[3] See page three (3) of the "Board Policy" on the "Special Condition "ISF" (Intermediate Sanction Facility)" dated September 1, 2015, attached as Exhibit "A" hereto, and incorporated by reference the same as if fully copied and set forth at length.

# Conclusion

Other than his refusal to participate in a mandatory polygraph examination, Applicant has fully complied with the terms and conditions of his release on parole. As set out in ***Murphy***, and ***Hoffman***, *supra*, the policy of the Parole Division and the Parole Board, requiring all parolees on the "sex offender caseload" to submit to polygraph examinations, without any offer or agreement of immunity, constitutes compulsion, as set out in ***Moore v. IRS***, and ***Lefkowitz v. Cunningham***, *supra*. Based on his refusal to participate in a polygraph examination, Applicant's parole status has been dramatically modified, and he has been removed from his home and family and been placed in a TDCJ facility - i.e., a prison. Additionally, the actions of the Parole Division and Parole Board are not incentives, but are designed to be and are punishment for the exercise of Applicant's constitutional right to remain silent.

Relator's only "remedy" is his application for post-conviction writ of *habeas corpus* under Article 11.07 § 3(c), C.Cr.P., but it is

17

an inadequate remedy, due to the statutory time restrictions and the possibility of repetition. The only possible review is via application for writs of mandamus and/or prohibition to this Court. Consequently, Relator has no adequate remedy at law.

Because their actions in seeking to require Relator to waive his rights under the Fifth and Fourteenth Amendments to the Constitution of the United States or be confined, violate Relator's right to Due Process of Law, withdrawal of the motion for revocation and order confining Relator to an ISF constitutes a ministerial act. Thus, Relator is entitled to the Court's writ of mandamus.

Further, because the actions of the Division and the Board detailed herein violate Relator's rights under the Fifth and Fourteenth Amendments to the Constitution of the United States, Relator is entitled to the issuance of a writ of prohibition, preventing the Division and the Board from engaging in such behavior in the future. Relator is entitled to the Court's writ of prohibition.

## Prayer

Relator respectfully prays this Court to enter an Order conditionally granting the requested writs of mandamus and prohibition.

Respectfully submitted,

| | |
|---|---|
| **Gary J. Cohen** | **John G. Jasuta** |
| Attorney at Law | Attorney at Law |
| The Cohen Law Firm | 1801 East 51st St. Ste 365-474 |
| 9300 Research Blvd, Suite 300 | Austin, Texas 78723 |
| Austin, Texas 78759-6553 | Tel. 512-474-4747 |
| Tel. (512) 476-6201 | Fax: 512-532-6282 |
| Fax: (512) 477-5773 | lawyer1@johnjasuta.com |
| garycohen@parolelaw.com | State Bar No. 10592300 |
| State Bar Card No. 04508300 | |

_____

**David A. Schulman**
Attorney at Law
1801 East 51st Street, Suite 365-474
Austin, Texas 78723
Tel. 512-474-4747
Fax: 512-532-6282
zdrdavida@davidschulman.com
State Bar Card No. 17833400

Attorney for Relator, James Emil Tout

## Certificate of Compliance and Delivery

20

This is to certify that: (1) this document, created using WordPerfect™ X7 software, contains 3,131 words, excluding those items permitted by Rule 9.4 (i)(1), Tex.R.App.Pro., and complies with Rules 9.4 (i)(2)(B) and 9.4 (i)(3), Tex.R.App.Pro.; and (2) on October 12, 2015, a true and correct copy of the above and foregoing "Application for Writs of Mandamus & Prohibition" was transmitted via the eService function on the State's eFiling portal, to John Presa (jprezas@wilco.org), Assistant District Attorney for Williamson County; Bettie Wells (bettie.wells@tdcj.texas.gov), general counsel for the Board of Pardons & Paroles; and Sharon Felfe Howell (sharon.howell@tdcj.state.tx.us), general counsel for the Texas Department of Criminal Justice.

_____
**David A. Schulman**

# Exhibit "A"



# BOARD POLICY

**SUBJECT:** SPECIAL CONDITION "ISF" (INTERMEDIATE SANCTION FACILITY)

**PURPOSE:** To establish "ISF"—Intermediate Sanction Facility—as a special condition of parole or mandatory supervision.

**AUTHORITY:** Texas Government Code Sections508.0441, 508.045, 508.221, 508.281, 508.2811, and 508.283
Texas Administrative Code Title 37, Part V, Chapter 146

**DISCUSSION:** Members of the Texas Board of Pardons and Paroles (Board) and Parole Commissioners determine conditions of parole and mandatory supervision. Except in special circumstances, Board Members and Parole Commissioners act in panels comprised of three persons, and panel decisions are made by majority vote. The Presiding Officer designates the composition of the parole panels. Special conditions are conditions imposed in addition to the standard conditions of parole or mandatory supervision. Unless otherwise provided, any condition may be imposed before or after release and shall remain in effect until specifically removed by a parole panel.

**POLICY:** Special condition "ISF" represents a cooperative effort between the Board, the Texas Department of Criminal Justice Parole Division (Division), Texas Department of Criminal Justice Corrections Institutional Division and private vendors to assist the offender with the successful reintegration into society.

Special condition "ISF" is intended to afford a sanction for an offender who fails to comply with the terms and conditions of release to parole or mandatory supervision. The sanction shall be in the form of a period of confinement in a facility under the terms and conditions provided by this and the Division's policy and procedures following a hearing or proceedings concerning alleged violations under Chapter 146 of the Board rules.

The goal of the parole panel imposed special condition "ISF" is to provide a sanction that will serve to punish, rehabilitate or reform an offender for a violation of the conditions of release to parole or mandatory supervision. The ISF sanction shall result in a period of confinement under the terms and conditions outlined in this policy. An offender shall return to active supervision upon successful completion of special condition "ISF."

At any time this condition is in effect, and to the extent directed in writing, an offender shall comply with the terms and conditions of the ISF confinement. Failure to abide by the rules and regulations of an ISF during the period of confinement may result in a subsequent review by a parole panel and further action as warranted following a hearing or proceedings concerning the alleged violations.

**DEFINITIONS:**   Intermediate Sanction Facility (ISF) - a facility under contract with or operated by the Texas Department of Criminal Justice. An ISF is used to confine low risk offenders under active supervision with no pending charges who have violated the conditions of release to parole or mandatory supervision.

Special Condition "ISF"- a parole panel imposed special condition that will serve to punish, rehabilitate or reform an offender in response to a violation of a condition or release to parole or mandatory supervision following a hearing or proceedings concerning alleged violations under Chapter 146 of the Board rules.

ISF Term - a period of confinement in an ISF imposed by a parole panel, provided the term is no less than 60 days nor greater than 180 days. The ISF term shall begin on the date the special condition is imposed by the parole panel following a hearing or proceedings when the offender is in custody on a warrant issued by the Division. The ISF term shall begin on the date the offender reports to the ISF after a hearing is held pursuant to a summons issued by the Division. If an offender fails to report to the ISF as instructed and a warrant issued, the ISF term shall begin at time of warrant execution.

ISF Until Discharged - confinement of an offender in an ISF until sentence expiration provided the maximum discharge date is no greater than 180 days from imposition. An offender may not be held in an ISF beyond the discharge date under the authority of this provision.

## PROCEDURE:

I.   Imposition of Special Condition "ISF"

    A.    A parole panel, upon majority vote, may impose special condition "ISF" as a condition of parole or mandatory supervision, following a hearing or proceedings concerning alleged violations under Chapter 146 of the board Rules.

    B.    Offender shall have the right to a hearing under Chapter 146 of the Board rules prior to the imposition of Special Condition "ISF," unless offender waives the right to a revocation hearing under Board Rules 146.4 and 146.5.

    C.    Upon imposition of special condition "ISF," an offender must comply with the rules and regulations of the ISF for the duration of the ISF term.

    D.    Special condition "ISF" shall remain in effect until successful completion of the ISF term.

    E.    Failure to abide by the rules and regulations of the ISF during an ISF term may result in a subsequent review by a parole panel and further action as warranted, following a hearing or proceedings concerning alleged violations under Chapter 146 of the board Rules.

II.  Withdrawal of Special Condition "ISF"

    A.    Once imposed, special condition "ISF" shall continue to govern the offender until successful completion of the ISF term, at which point the offender shall return to active supervision.

    B.    A parole panel, upon majority vote, may withdraw special condition "ISF" as a special condition of parole or mandatory supervision.

    C.    A request to withdraw special condition "ISF" shall be returned to the original voting panel with the only exceptions being that covered by other Board policy.

    D.    Special condition "ISF" shall terminate in the event an offender reaches the maximum expiration date during the course of an ISF term.

**ADOPTED BY MAJORITY VOTE OF THE BOARD ON THE 26TH DAY OF AUGUST, 2015.**

**RISSIE OWENS, PRESIDING OFFICER (CHAIR)**

*Signature on file.*