

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

**NO. WR-76,736-02**

---

**IN RE ROSALI BONILLA, Relator**

---

**ON PETITION FOR A WRIT OF MANDAMUS
IN CAUSE NO. 1056657-A IN THE 179TH DISTRICT COURT
FROM HARRIS COUNTY**

---

**ALCALA, J., delivered the opinion of the Court in which KELLER, P.J., MEYERS, WOMACK, JOHNSON, KEASLER, HERVEY, and COCHRAN, JJ., joined. PRICE, J., concurred.**

## O P I N I O N

When it declined to provide any information about the amount it would cost to purchase a trial and appellate transcript, the district clerk deprived Rosali Bonilla, relator, an imprisoned individual, of his constitutional right to have access to the courts. In denying relator's request for information, the district clerk relied on statutory authority in Section 552.028 of the Texas Government Code that broadly permits a governmental body to decline to give information requested by an imprisoned individual or his agent unless that agent is

an attorney. *See* TEX. GOV'T CODE § 552.028.[1]  We conclude that, when the information

sought by an imprisoned individual relates only to the amount that it would cost to obtain

trial and appellate transcripts for use in preparing an application for a writ of habeas corpus,

application of Section 552.028 to deny the prisoner access to that information

unconstitutionally infringes on his federal constitutional right to have access to the courts.

*See id*.  Although relator has established that he had no adequate remedy at law and a clear

right to relief, we decline to grant his request for relief in this application for a writ of

mandamus because, while this case was under abatement, the district clerk provided the

information to him and, therefore, his request for relief is now moot.

## I.  Background

Relator is an inmate incarcerated in the Texas Department of Criminal Justice serving

a sentence for aggravated sexual assault.    He wrote a letter to the Harris County District

Clerk asking for information about the amount that it would cost to buy his trial and appellate

---

[1]     The District Clerk's policy was in conformity with the plain language in Section 552.028 of
the Texas Government Code, which gives him the discretion not to accept or comply with a request
for information from an inmate or his agent, unless the agent is an attorney.  *See* TEX. GOV'T CODE
§ 552.028.  The Code states,

> REQUEST FOR INFORMATION FROM INCARCERATED INDIVIDUAL.  (a)
> A governmental body is not required to accept or comply with a request for
> information from:  (1) an individual who is imprisoned or confined in a correctional
> facility; or  (2) an agent of that individual, other than that individual's attorney when
> the attorney is requesting information that is subject to disclosure under this chapter.
> (b) This section does not prohibit a governmental body from disclosing to an
> individual described by Subsection (a)(1), or that individual's agent, information held
> by the governmental body pertaining to that individual.

*Id*.

transcripts. The district clerk declined the request in accordance with his office policy outlined in a written standard operating procedure that adopts the provisions in Section 552.028. *See id*. Under the four steps of this standard operating procedure, (1) a clerk reviews the inmate's letter and moves to step two, unless the letter is a petition or addressed to a named judge, in which event the letter is forwarded to the appropriate courtroom, (2) the clerk marks the file "canceled," (3) the clerk sends the inmate a form letter declining to provide the requested information and returns the inmate's original letter and envelope to him, and (4) the clerk keeps a running count of the number of these letters that it receives but does not keep the letter or any other identifying information about the sender.

After his first request for this information was declined, relator sent another letter in July 2013 to the district clerk. Relator informed the district clerk that he was requesting information regarding the amount it would cost to obtain the trial and appellate transcripts so that he could pay for them and then use them to prepare an application for a writ of habeas corpus to challenge his conviction. His letter cited to Supreme Court decisions supporting his position that, under the federal Constitution, a prisoner's right of access to the courts may not be denied or obstructed. In accordance with its standard operating procedures, the district clerk's response declined to give the information to relator.

The following month, relator filed a "motion to compel" in this Court repeating the content of his letter that he had sent to the district clerk and requesting relief from this Court through an order to the district clerk compelling him to provide the information to relator.

Based on the substance of relator's motion, this Court filed it as an application for a writ of mandamus, abated the case, and requested a response from the district clerk.[2] After that, the district clerk provided the information to relator, informing him that the cost to obtain the transcripts was $456.25.

## II. Constitutional Access to Courts

Citing to Supreme Court precedent, relator asserts that the district clerk's refusal to provide him with the information about the cost of the trial and appeal transcripts was "a denial of [his] access to court which is a fundamental right under the constitution." *See Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Johnson v. Avery*, 393 U.S. 483, 485 (1969). We agree.

"The right of access to the courts . . . is founded in the Due Process Clause and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights." *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974). "It is now established beyond doubt that prisoners have a constitutional right of access to the courts." *Bounds*, 430 U.S. at 821. More than seventy years ago, the Supreme Court recognized that right when it held that the "state and its officers may not abridge or impair [a relator's] right to apply to a federal court for a writ of habeas corpus." *Id*. at 821-22 (quoting *Ex parte Hull*, 312 U.S. 546, 549 (1941)). In *Bounds*, the Supreme

---

[2]  *See State ex rel. Wade v. Mays*, 689 S.W.2d 893, 897 (Tex. Crim. App. 1985) ("In determining the specific nature of the extraordinary relief sought, this Court will not be limited by the denomination of petitioner's pleadings, but will look to the essence of the pleadings, including the prayers, as well as the record before us.").

Court explained the rationale for enforcing the constitutional right to apply for a writ of habeas corpus as follows:

> [I]n this case, we are concerned in large part with original actions seeking new trials, release from confinement, or vindication of fundamental civil rights. Rather than presenting claims that have been passed on by two courts, they frequently raise heretofore unlitigated issues. As this Court has "constantly emphasized," habeas corpus and civil rights actions are of "fundamental importance . . . in our constitutional scheme" because they directly protect our most valued rights.

*Bounds*, 430 U.S. at 827 (quoting *Johnson*, 393 U.S. at 485; *Wolff*, 418 U.S. at 579). The Supreme Court "has steadfastly insisted that there is no higher duty than to maintain [the Great Writ] unimpaired." *Johnson*, 393 U.S. at 485 (citations omitted).

In accordance with this principle, the Supreme Court has repeatedly struck down restrictions impeding access to the courts by habeas applicants and has required remedial measures "to insure that inmate access to the courts is adequate, effective, and meaningful." *Bounds*, 430 U.S. at 822. Multiple decisions by the Supreme Court have struck down state laws and rules that unconstitutionally impeded an inmate's access to the courts. For example, an indigent prisoner "must be allowed to file appeals and habeas corpus petitions without payment of docket fees." *Id*. (citing *Burns v. Ohio*, 360 U.S. 252 (1959); *Smith v. Bennett*, 365 U.S. 708 (1961)). Additionally, prison regulations must not prohibit prisoners from assisting each other with habeas corpus applications and other legal matters because "jailhouse lawyers" serve a role in assisting indigent prisoners who are unable to afford counsel and are "unable themselves, with reasonable adequacy, to prepare their petitions"

challenging the legality of their confinements. *Johnson*, 393 U.S. at 489. Furthermore, "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828.

Although they have rights to appointed counsel and a free trial record on direct appeal, indigent defendants do not have those rights for discretionary review of a decision of the court of appeals, nor for collateral attacks on their convictions. *Compare Griffin v. Illinois*, 351 U.S. 12, 19-20 (1956) (indigent inmate has constitutional right to obtain a free trial record for direct appeal), *and Douglas v. California*, 372 U.S. 353, 357-58 (1963) (indigent inmate has right to appointed counsel for direct appeal), *with Johnson*, 393 U.S. at 488 ("It has not been held that there is any general obligation of the courts, state or federal, to appoint counsel for prisoners who indicate, without more, that they wish to seek post-conviction relief."). In most federal courts, however, it is the usual practice to appoint counsel in post-conviction proceedings, but only after a petition for post-conviction relief passes initial judicial evaluation and the court has determined that the issues presented call for an evidentiary hearing. *See Johnson*, 393 U.S. at 487 (describing practice of most federal courts in delaying appointment of counsel for indigent habeas petitioners until merits of claims have been assessed). Although an indigent inmate may eventually receive legal counsel to pursue his application, his initial effort in preparing his application for a writ of habeas corpus will

likely be pro se.

The Texas Constitution declares that "the writ of habeas corpus is a writ of right, and shall never be suspended." TEX. CONST., art. I, § 12. The Texas Constitution mandates that the Legislature "shall enact laws to render the remedy speedy and effectual." *Id*. Accordingly, the Legislature codified procedures for filing applications for writs of habeas corpus in death and non-death cases. *See* TEX. CODE CRIM. PROC. arts. 11.07 (procedures for applications in non-death cases); 11.071 (procedures for applications in death cases). For an indigent inmate wishing to pursue an application for a writ of habeas corpus in a non-death case under Article 11.07, as here, ordinarily the burden falls solely on him, without appointed counsel, to initially file his application. An applicant will usually get only one bite at the habeas-corpus apple because Section 4 of Article 11.07 precludes a court from considering the merits of or granting relief based on a subsequent application unless the application contains sufficient specific facts establishing one of the two limited exceptions to the one-bite rule. *See* TEX. CODE CRIM. PROC. art. 11.07, § 4.

With no right to appointed counsel, an indigent inmate, either alone or possibly with the help of a "jailhouse lawyer," family member, or friend, must obtain any records necessary to prepare and file his application for a writ of habeas corpus. In all likelihood, an applicant will need to obtain and review his trial and appellate transcripts to ensure that he considered the entire record so that he may present all his claims at what will likely be his first and only bite at the habeas-corpus apple. And the first step to obtaining a transcript is to find out how

much it costs. By refusing to tell the relator how much it would cost to purchase a transcript, the district clerk cut off the relator's ability to prepare and present a complete application for a writ of habeas corpus. Furthermore, even if the indigent inmate found a family member or friend to assist him by requesting the information on his behalf, the district clerk's policy would also operate to withhold that information from anyone other than an attorney who was acting as an agent for an inmate. *See* TEX. GOV'T CODE § 552.028. Although Section 552.028 and the district clerk's policy would have required the district clerk to respond to an attorney's request for information, that was immaterial to relator, who was acting pro se in his pursuit of an application for a writ of habeas corpus. *See id*.

By depriving relator of the information about the cost to obtain his trial and appellate transcripts, the district clerk's policy invoking Section 552.028 deprived relator of the ability to prepare an application for a writ of habeas corpus that included all possible grounds for relief and thereby denied him the right to access the courts.

### III. Relief is Warranted, But Relator's Request is Moot

To be entitled to mandamus relief, the relator must show two things: (1) that he has no adequate remedy at law, and (2) that what he seeks to compel is a ministerial act. *In re State ex rel. Weeks*, 391 S.W.3d 117, 122 (Tex. Crim. App. 2013). As to the first prerequisite, relator has no adequate remedy at law because the information he seeks pertains to an unfiled, future post-conviction application for a writ of habeas corpus.

The second prerequisite, the ministerial-act requirement, is satisfied if the relator can

show a clear right to the relief sought. *Id*. A clear right to relief is shown when the facts and circumstances dictate but one rational decision under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles. *Id*. An issue of first impression can sometimes qualify for mandamus relief. *Id*.

The issue before us is one of first impression in the sense that this Court has never expressly held that a district clerk violates a defendant's constitutional right to access the courts by refusing to inform an indigent inmate of the amount that it would cost the inmate to obtain a transcript of his case for his use in preparing an application for a writ of habeas corpus. Furthermore, no Texas court of appeals has decided this issue. *Compare Cox v. State*, 202 S.W.3d 454, 455 (Tex. App.—Amarillo 2006) (addressing defendant's request for a free record sought for purpose of collaterally attacking conviction); *Nabelek v. Bradford*, 228 S.W.3d 715, 718 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (addressing request for discovery of files that did not belong to Nabelek)[3]; *Harrison v. Vance*, 34 S.W.3d 660,

---

[3]    In *Nabelek v. Bradford*, Nabelek appealed the grant of summary judgment in favor of Bradford, who was the chief of police for the Houston Police Department. *Nabelek v. Bradford*, 228 S.W.3d 715, 718 (Tex. App.—Houston [14th Dist.] 2006). Nabelek was convicted of aggravated sexual assault of a child, sexual performance by a child, and possession of child pornography. *Id*. at 717. The evidence of guilt included a photograph seized from Nabelek depicting him molesting a two-year-old child. *Id*. Nabelek sought portions of a file regarding his offenses from Bradford. *Id*. Nabelek asserted that Bradford was violating his due-process right to information necessary to pursue a petition for a writ of habeas corpus. *Id*. at 718. Declining to provide the information, Bradford invoked Section 552.028 of the Texas Government Code. *Id*. Citing to Supreme Court precedent, the court of appeals noted that Nabelek had no constitutionally protected right to that information as a matter of due process because a habeas relator, unlike the usual civil litigant in federal court, "is not entitled to discovery as a matter of ordinary course." *Id*. (quoting *Bracy v. Gramley*, 520 U.S. 899, 904 (1997)). The court explained that the information and items sought by Nabelek were not his but were instead the property of and in the custody of the City. *Id*. *Nabelek*

(continued...)

663 (Tex. App.—Dallas 2000) (addressing denial of access to grand jury proceedings); *Hickman v. Moya*, 976 S.W.2d 360, 361 (Tex. App.—Waco 1998, pet. ref'd) (addressing denial of access to inmate disciplinary records). Although there is no specific precedent in Texas addressing the unconstitutionality of Section 552.028 as it applies to a district clerk's refusal to provide information needed by an imprisoned inmate desiring to pursue an application for a writ of habeas corpus, the constitutional right to access the courts is well established by Supreme Court precedent that has required no docketing fees for indigent habeas applicants, access to jailhouse lawyers, and the benefit of prison law libraries. We hold that relator has satisfied the ministerial-act requirement by showing that he has a clear right to the relief sought because the facts and circumstances dictate but one rational decision under unequivocal, well-settled, and clearly controlling legal principles. *See Weeks*, 391 S.W.3d at 122. Relator was entitled to mandamus relief.

We note, however, that while this case was abated to obtain a response from the district clerk, the information sought by relator was provided to him. This particular dispute is now moot. This Court has dismissed petitions for mandamus on the ground that the relief

---

[3](...continued)
is distinguishable from the facts of this case. In *Nabelek*, the information was a file that did not belong to the relator and that appeared to be properly characterized as discovery. *Id*. In contrast, here the information sought by relator cannot be characterized as discovery of underlying facts or evidence. And it is undisputed that the relator had the right to access his trial and appellate transcripts, presuming he pays for them. *See* TEX. GOV'T CODE § 552.022(a)(17). The sole question before us is whether the district clerk can refuse to tell relator the amount it would cost for him to pay for the trial and appellate transcripts. That question was not answered by *Nabelek*. *See Nabelek*, 228 S.W.3d at 718.

sought had become moot and, therefore, "there is nothing to mandamus, ergo mandamus does not lie." *State ex rel. Holmes v. Denson*, 671 S.W.2d 896, 899 (Tex. Crim. App. 1984); *see Homan v. Hughes*, 708 S.W.2d 449, 453-54 (Tex. Crim. App. 1986) (holding that the applicant was "entitled to relief with regard to the request for writ of mandamus to compel the trial court to vacate the improper order[,]" but dismissing application because the trial court's actions would "remain unchanged"); *State ex rel. Eidson v. Edwards*, 793 S.W.2d 1, 4 (Tex. Crim. App. 1990) (dismissing petition for mandamus on original submission on the grounds that the relief sought was moot). We, therefore, decline to grant mandamus relief and dismiss the petition because the matter is now moot.

## IV. Conclusion

A district clerk must provide information to an imprisoned or confined individual or his agent about the amount it would cost to obtain trial and appellate transcripts so that the individual may then pay for them and use them to pursue an application for a writ of habeas corpus. Because the district clerk has now complied with relator's request for information, we dismiss relator's petition for mandamus against the district clerk.

Delivered: March 12, 2014

Publish