

# IN THE
# TENTH COURT OF APPEALS

### No. 10-14-00320-CR

**CAROL JEAN STANLEY,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 19th District Court
McLennan County, Texas
Trial Court No. 2012-1589-C1**

## DISSENT TO ORDER

In *Anders* cases where appointed counsel has not already provided the appellant

with the record, this Court has historically notified the appellant by letter as follows:

> Your attorney has filed a brief finding that your appeal is frivolous. You
> have a right to review the record from your trial and file a written response
> with this Court raising any issues which you think the Court should
> consider in deciding your appeal. If you wish to obtain a copy of the record,
> you must contact the trial court clerk, whose address is: … .

Our letter, a copy of which is also sent to the trial-court clerk, then provides the

appellant with the trial-court clerk's address and cites to *Gonzales v. State*, 984 S.W.2d 790,

791 (Tex. App.—Waco 1999, order). In *Gonzales*, we ordered the trial-court clerk to provide the appellant with the copy of the record on file with the trial-court clerk. *See id.*; *see also Kelly v. State*, 436 S.W.3d 313, 321 (Tex. Crim. App. 2014) ("[B]y rule the trial court clerk retains a duplicate that is specifically designated for use by the parties. Zeroing in on this fact, many of the courts of appeals instruct the trial court to have its clerk make the duplicate appellate record available to the appellant, which generally requires the trial court clerk to forward a physical copy to the appellant if he is incarcerated.").

Since our order in *Gonzales*, I am aware of only one *Anders* case in which the appellant was unable to obtain the record from the trial-court clerk without our intervention. Plainly, our letter and its citation to *Gonzales* notify the trial-court clerk that he or she must provide the record to the appellant if the appellant requests it. And I cannot recall a case in this Court similar to *Kelly*, where the Court of Criminal Appeals held that the court of appeals erroneously decided an *Anders* case without satisfying the appellant's request for access to the appellate record. *Kelly*, 436 S.W.3d at 322.

Therefore, I am puzzled by the majority's order, which announces new and overly burdensome procedures in *Anders* cases.[1] I believe that the new procedures set forth in this order contradict *Kelly* and are confusing and unnecessary.[2] Furthermore, I think that by threatening an indigent and usually incarcerated appellant with dismissal if the

---

[1] In cases like this where we have a motion for pro se access to the appellate record and are required by *Kelly* to enter a formal written order, *see Kelly*, 436 S.W.3d at 321, I would adopt the language from our template letter and add only that the trial-court clerk must notify us in writing of the date that the clerk sent the record to the appellant. *See id.*

[2] "This [order] reminds me of the adage, if it ain't broke, then regulate it until it is." *Kelly*, 436 S.W.3d at 323 (Alcala, J., concurring).

indigent appellant cannot afford to mail the usually voluminous record to us, the majority's order likely violates due process and could chill the right of indigent appellants to review the record in *Anders* cases. Accordingly, I respectfully dissent.

The majority's order is confusing because it orders Stanley's appointed counsel to obtain a copy of the appellate record and send it to Stanley, but it does not describe what "copy" means. If the majority's order means that Stanley's appointed counsel is to obtain the copy of the appellate record on file with trial-court clerk and send that copy to Stanley, the order should say so.[3]

And if the majority's order means that Stanley's appointed counsel is to obtain and make a photocopy of the appellate record to send to Stanley, it should say so. If that is the case, the order creates the further problem of who (Appointed counsel? The county?) should bear the cost of photocopying appellate records that are often many hundreds, if not thousands, of pages. Furthermore, in *Kelly*, the Court of Criminal Appeals specifically stated that it would not require appellate counsel to copy and send the record to the appellant:

> [I]t is sometimes the case that, when the appellate record is not voluminous, appellate counsel will *sua sponte* send a copy of the appellate record to the appellant along with the *Anders* brief and motion to withdraw. That would certainly expedite the process, and the court of appeals could then simply issue an order requiring the appellant to file his response to the *Anders* brief by a date certain. *But we do not require appellate counsel to do so.*

*Kelly*, 436 S.W.3d at 320 n.22 (emphasis added). While the Court of Criminal Appeals in

---

[3] As noted above, our template letter to appellants in *Anders* cases has been successfully accomplishing this task without counsel's involvement for quite some time.

*Kelly* left us some leeway on how to insure that an appellant obtains the record,[4] we should not adopt a procedure that *Kelly* specifically declined to require.

Next, I disagree with the order's requirement that Stanley must send the copy of the appellate record to this Court. If the court's order intends for Stanley to be provided with the copy of the appellate record on file with the trial-court clerk and for Stanley to send us that copy, I see several problems.

First, if we are going to require the appellant to return the trial-court clerk's copy of the appellate record, we should require that it be returned to the trial-court clerk, not to us. Our clerk's office should not be burdened with handling what are usually voluminous appellate records. Based on the terms of the court's order ("Appellant's failure to comply with his Order … may result in the dismissal of this appeal"), presumably our clerk's office will have to inspect the appellate record upon receipt to confirm that all of it has been sent to us and that it was not taken apart or marked on. Also, our clerk's office should not have to bear the cost of then sending the appellate record to the trial-court clerk. Lastly, now that we are in the age of electronic appellate records, I question whether the trial-court clerk needs the copy of the appellate-record returned at all. It is likely that the trial-court clerk will just print a copy of the appellate record for the appellant from the electronic version and will not need back the paper copy from the appellant.

---

[4] "By all accounts, each of these procedures has worked tolerably well in the past, and we need not mandate or even recommend one over the others." *Kelly*, 436 S.W.3d at 321.

And if the court's order intends for appointed counsel to provide a photocopy of the appellate record to Stanley, I do not see a need for requiring Stanley to send us that photocopy of the record. It will burden our clerk's office with handling, storing, and disposing of large volumes of documents that we have no need to possess in the first place.

Finally, for several reasons I am troubled by the order's threat of dismissal of the appeal under our inherent authority if Stanley fails to timely send the copy of the appellate record to this Court. First, the order relies on our "inherent authority"[5] and on the presumption that the appellate record was obtained under false pretense (delaying the appeal) to support dismissal if the record is not timely sent to us by Stanley, whether or not she files a response. But in an *Anders* case, the appellant, who has already been appointed counsel, is necessarily indigent. Therefore, it seems just as, if not more, likely that if the record is not timely sent to us by the appellant, the reason is that the indigent and usually incarcerated appellant could not pay the cost of mailing the appellate record to us from prison or jail.[6]

Dismissal of an appeal—even an appeal in which an *Anders* brief has been filed— because an indigent appellant cannot pay the cost of mailing the appellate record to us

---

[5] Our inherent authority allows us to take certain actions to aid us in the exercise of our jurisdiction, in the administration of justice, or in preserving our independence and integrity. *State v. Johnson,* 821 S.W.2d 609, 612 (Tex. Crim. App. 1991) (citing *Eichelberger v. Eichelberger,* 582 S.W.2d 395, 399 (Tex. 1979)).

[6] Some appellate records in criminal cases are small; most are not, and some require more than one standard file box; one box alone could cost an indigent appellant approximately $20 to mail. Regardless, the cost of mailing an appellate record from jail or prison is not insubstantial for an indigent appellant who may have little or no money in his or her inmate account.

cannot withstand constitutional scrutiny. It is indisputable that an indigent defendant has a constitutional right to a free appellate record and that convicted persons have a constitutional right of access to the courts. *See Griffin v. Illinois,* 351 U.S. 12, 18-19, 76 S.Ct. 585, 590-91, 100 L.Ed. 891 (1956) (holding that state provision denying a complete and free record, and thus full appellate review, to indigent persons violates due process and equal protection); *In re Bonilla,* 424 S.W.3d 528, 531-33 (Tex. Crim. App. 2014) (orig. proceeding) (discussing right of access to courts). While the right of an appellant in an *Anders* case to have access to the record has not been held to be *constitutionally* required, it nonetheless is a recognized right. *See Kelly*, 436 S.W.3d at 316 n.7. Also, the mere threat of dismissal and the indigent appellant's prospect of having to pay the cost of mailing the record could chill the exercise of the appellant's right in an *Anders* case to review the record.

Furthermore, while I concede the possibility that an appellant *might* request the appellate record in an *Anders* case to delay the appeal, in addition to indigence, there are other realistic and excusable reasons that could explain why an indigent and incarcerated appellant might not timely send us the record.[7] I thus disagree with the blanket presumption of an intent to delay the appeal if Stanley fails to timely send us the record.

---

[7] Because of this Court's extensive experience with inmate civil litigation, I am aware of at least the following possible reasons (in addition to indigence) why an incarcerated appellant might be unable to timely send us the record: the appellant has been transferred to another unit and her property, which is moved separately, has not caught up with her; the appellant's legal materials, including the record, have been confiscated (rightly or wrongly) by prison authorities; the appellant's unit is on lockdown; the appellant has been disciplined and cannot use the commissary to buy postage to mail the record; and the record has been lost or destroyed through no fault of the appellant (*e.g.,* a cellmate destroyed it, or prison authorities confiscated it and either intentionally or accidentally destroyed it).

To comport with due process, the Court should provide the appellant the opportunity to rebut the presumption before dismissal. If the appellant fails to timely send us the appellate record, the Court should first notify the appellant that the time period for sending us the appellate record has passed and that the Court will dismiss the appeal unless, within an adequate time period, the appellant either sends us the record or provides a sufficient reason why the record has not been timely sent.

Finally, once an *Anders* brief has been filed and the appellant has been given adequate time to file a pro se response, the appeal is at issue and the Court can proceed to decide the case on the merits. The appellant is not required to file a pro se response, and the appeal can be decided without the record being sent to us from the appellant. In my view, dismissing the appeal at that juncture because the indigent appellant has not timely sent the copy of the record to us is unwarranted.

In conclusion, I would grant Stanley's motion and, as we have done for years, order the trial-court clerk to send the appellate record to Stanley. I would further require the trial-court clerk to notify us in writing of that act. Because the majority does otherwise, I respectfully dissent.

REX D. DAVIS
Justice

Delivered and filed May 7, 2015
Publish

