

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————

No. 02-19-00003-CV

———————————

DONALD READ, Appellant

V.

LORIE NAYLOR, Appellee

On Appeal from the 141st District Court
Tarrant County, Texas
Trial Court No. 141-293386-17

Before Sudderth, C.J.; Gabriel and Kerr, JJ.
Memorandum Opinion by Chief Justice Sudderth

# MEMORANDUM OPINION

In July 2017, pro se Appellant Donald Read sued Appellee Lori Naylor, who was the court reporter during Read's criminal trial five years prior that resulted in his felony driving-while-intoxicated conviction and twenty-five-year sentence. *See Read v. State*, No. 11-13-00344-CR, 2015 WL 6121536, at *1 (Tex. App.—Eastland Oct. 15, 2015, pet. ref'd) (mem. op., not designated for publication). In his original petition, Read complained that Naylor had transcribed the record for his appeal but had not delivered it to him, depriving him of the exculpatory evidence that he needed to support his habeas corpus petition and actual-innocence claim and thus denying him due process. Read sought a minimum of $200,000 in damages.

More than a year later, an attorney with the Tarrant County District Attorney's Office filed an original answer on Naylor's behalf and a motion to dismiss pursuant to civil practice and remedies code chapter 14,[1] arguing that Read's suit had no basis in law or in fact because he had failed to identify a cause of action for which he would be entitled to money damages and because Naylor, as a governmental official sued in her official capacity, was immune from liability and from suit. Read objected, complaining that the district attorney's representation of Naylor was a conflict of interest because he had sent Naylor a check for $18 to purchase some of the record of

---

[1]Read had previously sued one of the witnesses in his criminal case, but that lawsuit was also dismissed pursuant to civil practice and remedies code chapter 14. *See Read v. Verboski*, 524 S.W.3d 901, 902 (Tex. App.—Fort Worth 2017, pet. denied).

his criminal trial and when she did not send him anything in return, he reported the incident as theft to the Tarrant County District Attorney.[2]

Read appeared telephonically at the trial court's hearing on Naylor's motion. At the beginning of the hearing, Read asked the trial court if it had received his objection to Naylor's being represented by the district attorney, and the trial court replied, "I did receive that." The trial court then asked Read if he wanted to make his objection on the record or to note that it was in the file. Read replied, "Yes, and on the record, along with a few other things," but he did not elaborate further or secure any ruling on his objection.

Read informed the trial court that he had had court-appointed counsel for the appeal of his criminal conviction but claimed that the attorney had worked against him instead of on his behalf. The trial court said, "Then you can call the state bar about the court-appointed attorney. What do you want me to do for you?" Read responded, "Well, I'm wanting the transcript so that I can prove my innocence" and stated that the Eastland Court of Appeals had "actually falsified some government

---

[2]In his appellate brief, Read claims that "[e]ighteen pages of intentional bog[u]s documents were sent" by the district clerk's office and that he immediately complained and received a notice that his money would be returned. According to Read, the district clerk returned his money, and someone named Justin Davis advised him to mail the returned check to Naylor to obtain the part of the record that he was seeking. He did so and complained in his original petition, as well as on appeal, that he had not received his requested pages. In his original petition, Read did not indicate whether Davis was a clerk, an attorney, or a jailhouse acquaintance.

3

records and included some things that [weren't] even in the trial" and had affirmed his conviction.

The trial court asked Read whether his attorney had received the record, and Read replied,

> Yes, sir. I filed a grievance with the State Bar Association because he refused to get me a copy, and he refused to have any kind of communication with me or anything. He wasn't representing me. He was stealing taxpayer's money from the taxpayers. He didn't do a thing in the world for me. He didn't cite not one constitution. The only statute he cited in his appeal was the Penal Code 49[.]09. He didn't do anything besides take your money. You pay taxes, too, Your Honor.
>
> . . . .
>
> And he took your money. He took our money. He's destroying our judicial system. Our judicial system is based on the administration of justice, not the administration of convicted indigent defendants.
>
> . . . .
>
> . . . I need the transcript so that I can prove in the federal court all of this what I'm telling you here.

Read also informed the trial court that he had a parallel lawsuit pending in the federal court because he did not "need to mess with Texas courts that are corrupt" and that he had filed suit in federal court "where [he] might find some justice." The trial court concluded that Read had not been able to articulate a cause of action against anyone and granted the motion to dismiss.

Under civil practice and remedies code section 14.003, a court may dismiss a claim if it finds that the claim is frivolous or malicious, i.e., that the claim has no

4

arguable basis in law or in fact. Tex. Civ. Prac. & Rem. Code Ann. § 14.003(a)(2), (b)(2); *Verboski*, 524 S.W.3d at 903. We review a dismissal under chapter 14 for an abuse of discretion but review de novo the legal question of whether a claim has an arguable basis in law, and we will affirm the dismissal if it was proper under any legal theory. *Verboski*, 524 S.W.3d at 903 (citing *Hamilton v. Pechacek*, 319 S.W.3d 801, 809 (Tex. App.—Fort Worth 2010, no pet.)). In conducting our review, we take as true the factual allegations in an inmate's petition and review the types of relief and causes of action set out therein to determine whether, as a matter of law, the petition stated a cause of action that would authorize relief. *Hamilton*, 319 S.W.3d at 809.

In two points, Read argues that the trial court abused its discretion (1) by dismissing the lawsuit because he clearly pleaded damages and an injury and (2) by allowing a public official to represent Naylor. We note ab initio that Read did not preserve for our review the argument in his second point because he failed to secure a ruling by the trial court on his objection, and we overrule his second point. *See* Tex. R. App. P. 33.1(a).

In the argument section of his first point, Read acknowledges that the trial court dismissed his suit because he failed to articulate a cause of action but complains that Naylor "detrimented [his] Due Process rights by failing to be bound to court order and Law." In his original petition, Read alleged that Naylor's refusal to comply with rule of appellate procedure 20.2, a Judicial Branch Certification Commission recommendation, "Tx. Gov. Statutes," and his Fourteenth Amendment rights

5

"deprived [him] of exculpatory evidence . . . which consist[ed] of the potential to exonerate had he been honored with the record for consultation and appella[te] representation with his statutorily appointed attorney."

With regard to his complaint regarding noncompliance with rule of appellate procedure 20.2, Read acknowledged during the hearing on Naylor's motion that his appointed counsel had received the free trial record during his appeal. *See generally* Tex. R. App. P. 20.2 (stating that "[w]ithin the time for perfecting the appeal," an indigent appellant can request a free appellate record, and if the trial court finds that he cannot pay or give security for the appellate record, then it must order the reporter to transcribe the proceedings, and when the court certifies that it has been furnished to the appellant, the reporter must be paid the amount set by the trial court from the general funds of the county in which the offense was committed). Because Read had appointed counsel during his direct appeal, he was not entitled to his own copy of the appellate record during that case. *See generally Ex parte Bohannan*, 350 S.W.3d 116, 116 n.1 (Tex. Crim. App. 2011) (noting that when a habeas applicant is represented by counsel, the court may disregard his pro se submissions and take no action on them); *Patrick v. State*, 906 S.W.2d 481, 498 (Tex. Crim. App. 1995) (explaining that an appellant is not entitled to hybrid representation, i.e., representation both by counsel and pro se), *cert. denied*, 517 U.S. 1106 (1996). We overrule this portion of Read's first point.

As to his complaint regarding the Judicial Branch Certification Commission, Read alleged in his original petition that on December 26, 2014, he submitted a complaint against Naylor with that commission, which responded on August 7, 2015, with a notice that the complaint was being dismissed. The Judicial Branch Certification Commission (JBCC) "oversees the certification, registration, and licensing of Court Reporters . . . throughout the State of Texas." *See* Judicial Branch Certification Commission, https://www.txcourts.gov/jbcc (last visited August 13, 2019); *see also Pagonis v. Judicial Branch Certification Comm'n*, No. 03-15-00149-CV, 2015 WL 1478197, at *1 (Tex. App.—Austin Mar. 25, 2015, no pet.) (mem. op.) (dismissing for want of jurisdiction an appeal filed by pro se appellant regarding a complaint he had filed against a court reporter with the JBCC). Read does not explain how the JBCC's dismissal of his complaint presents a separate legal claim against Naylor. *See* Tex. R. App. P. 38.1(i) (requiring that an appellant's brief contain a clear and concise argument with appropriate citations to authorities and the record). Accordingly, we overrule this portion of Read's first point.

Regarding Read's complaint as to "Tx. Gov. Statutes," in his original petition, he cited government code section 52.047, which states that a person may apply for a transcript of the evidence in a case reported by an official court reporter but must do so in writing and that the court reporter shall furnish the transcript not later than the 120th day after the date the reporter receives the application and the transcript fee is paid or the person establishes indigency under rule of appellate procedure 20. Tex.

7

Gov't Code Ann. § 52.047(a). Read complained in his original petition that under rule of appellate procedure 20.2, Naylor could not charge him any additional fees, but there is no indication in the record that she has attempted to do so. It is unclear from Read's petition what other "Tx. Gov. Statutes" might be the basis for his complaints. Accordingly, we overrule this portion of his first point. *See* Tex. R. App. P. 38.1(i).

Finally, Read complains on appeal that as an indigent inmate, he was oppressed, exploited, and deprived of due process by his court-appointed attorney, who received taxpayer funds to ensure his conviction. Although this appears to be in the nature of a conspiracy claim, Read did not raise a conspiracy claim in his original petition. Read also complains that Naylor withheld a free reporter's record from him during his criminal case, "which made it impossible for [him] to confer with [his appointed counsel] on issues of merit for his appeal (resulting in ineffective assistance of counsel)," and which, he adds, resulted in his "false imprisonment since his arrest February 18, 2013 to date." But Read did not raise a false imprisonment claim in his original petition either.

While an indigent defendant has the right to appointed counsel and a free trial record for his direct appeal, he does not have the right to either one for a collateral attack on his conviction. *In re Bonilla*, 424 S.W.3d 528, 532 (Tex. Crim. App. 2014) (orig. proceeding). Accordingly, to the extent that Read argues that he is entitled to a free trial record for the criminal conviction that has already been affirmed on appeal, his lawsuit has no arguable basis in law, and we overrule this portion of his first point.

Additionally, Read is essentially challenging his criminal conviction in a civil suit, and because he is seeking to recover damages for harm caused by actions whose unlawfulness would render his conviction or sentence invalid, his pleadings had to meet the test set out in *Heck v. Humphrey*, 512 U.S. 477, 486–87, 114 S. Ct. 2364, 2372 (1994), in order to state a viable constitutional tort claim. *See* 42 U.S.C.A. § 1983. In *Heck*, the Court held that to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a plaintiff must prove that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus. 512 U.S. at 486–87, 106 S. Ct. at 2372. To the extent Read's pleadings challenge his criminal conviction in a civil suit but do not meet the requirements set out in *Heck*, he has failed to state a claim with an arguable legal basis, and we overrule this portion of his first point.

And while a district clerk may not deprive an indigent defendant of information about the cost to obtain his trial and appellate transcripts, *Bonilla*, 424 S.W.3d at 533, this is not the basis of Read's complaint. According to Read, the district clerk told him to contact Naylor, and someone advised him to send his returned check to her. He then endorsed the refund check and sent it to Naylor. But Read does not allege that he asked Naylor for the cost of preparing the requested pages or included any

9

other explanation with his forwarded check or that Naylor actually cashed his check and retained the proceeds. *Cf. Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 302 n.4 (Tex. 2015) (explaining that for a "money had and received" claim, a plaintiff must show that a defendant holds money that in equity and good conscience belongs to the plaintiff). Thus, Read has also failed to state a claim with an arguable legal basis here, and we overrule the remainder of his first point.

Having overruled both of Read's points, we affirm the trial court's judgment.


/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Delivered: August 26, 2019