

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | No. 08-23-00196-CR |
|---|---|---|
| EX PARTE: | § | Appeal from |
| DAVID CAYETANO-VAZQUEZ, | § | the County Court |
| Appellant. | § | of Kinney County, Texas |
| | § | (TC# 11472CR) |

## MEMORANDUM OPINION

David Cayetano-Vazquez (Cayetano-Vazquez) is a noncitizen who was arrested under Operation Lone Star (OLS) and charged with the misdemeanor offense of criminal trespass. Following his arrest, Cayetano-Vazquez filed an application for a pretrial writ of habeas corpus in which he requested the issuance of a habeas writ, an evidentiary hearing, and a dismissal of the underlying charge, contending he was the subject of selective prosecution in violation of state and federal constitutional equal protection principles. Without issuing a writ or holding a hearing, the trial court denied his habeas application. Cayetano-Vazquez appealed, contending the trial court erred in not granting his requested relief. Treating the appeal as a mandamus petition, we remand to the trial court to give it the opportunity to reconsider its ruling in light of recent Fourth Court of Appeals' precedent governing Cayetano-Vazquez's claims.

FACTUAL AND PROCEDURAL BACKGROUND

**A. Cayetano-Vazquez's arrest and request for habeas relief**

On March 6, 2021, Governor Greg Abbott directed the Texas Department of Public Safety to initiate OLS "to deter[] illegal border crossing and . . . prevent criminal activity along the border." *Ex parte Aparicio*, 672 S.W.3d 696, 701 (Tex. App.—San Antonio 2023, pet. granted). As part of OLS, Cayetano-Vazquez, a noncitizen, was arrested for criminal trespass in Kinney County on November 5, 2021. He filed an application for a pretrial writ of habeas corpus seeking dismissal of the criminal charge, arguing his rights had been violated under the United States Constitution's Equal Protection Clause and the Texas Constitution's Equal Rights Amendment, as the State was selectively prosecuting men, and not similarly situated women, for criminal trespass as part of OLS. *See* U.S. Const. amend. XIV; Tex. Const. art. I, § 3a. Cayetano-Vazquez attached several exhibits supporting his claim that the State had a policy of arresting only male noncitizens for criminal trespass while referring similarly situated female noncitizens to Border Patrol. The State did not file a response to the application.

On June 16, 2023, the trial court denied Cayetano-Vazquez's application without issuing the writ or holding an evidentiary hearing. Cayetano-Vazquez appealed.[1]

**B. *Aparicio* and its progeny**

On June 21, 2023, the Fourth Court of Appeals issued *Ex parte Aparicio*, 672 S.W.3d 696. In that case, a noncitizen (Aparicio), who had been arrested for criminal trespass in Maverick County as part of OLS, filed a similar application for a pretrial writ of habeas corpus seeking dismissal of the charge against him, making an identical claim that the State was selectively

---

[1] The appeal was transferred from the Fourth Court of Appeals pursuant to a Texas Supreme Court docket equalization order. Accordingly, we apply the Fourth Court of Appeals' precedent to the extent it conflicts with our own. *See* TEX. R. APP. P. 41.3.

prosecuting men under OLS in violation of his constitutional rights. *Id.* at 701. Unlike the present case, however, the trial court in *Aparicio* issued the writ and held a full evidentiary hearing on the question of whether the State had engaged in selective prosecution. *Id.* at 701–06. The trial court denied the writ on its merits despite undisputed evidence that the State was criminally prosecuting only male noncitizens for trespass under OLS, finding that Aparicio's equal protection argument failed because the State could prosecute women if it "chose to."[2] *Id.* at 706.

The Fourth Court of Appeals disagreed, finding Aparicio met his initial burden of establishing a prima facie case of selective prosecution, i.e., that "the prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." *Id*. at 715. The burden then shifted to the State "to justify the discriminatory treatment." *Id*. at 715 (citing *Ex parte Quintana*, 346 S.W.3d 681, 685 (Tex. App.—El Paso 2009, pet. ref'd)). Aparicio's federal equal protection claim was subject to intermediate scrutiny; namely, the State had to demonstrate that its "discriminatory classification is substantially related to an important governmental interest." *Id.* at 708 (citing *Clark v. Jeter*, 486 U.S. 456, 461 (1988); *Casarez v. State*, 913 S.W.2d 468, 493 (Tex. Crim. App. 1994) (en banc) (op. on reh'g)). And Aparicio's state-based equal rights claim was subject to strict scrutiny; namely, the State had to demonstrate that its actions "were narrowly tailored to serve a compelling governmental interest." *Id*. at 716 (citing *In re Dean*, 393 S.W.3d 741, 749 (Tex. 2012)).

On appeal, the State argued "'the emergency situation on Texas's southern border' justifies its discriminatory actions." *Id.* at 716. However, the court of appeals noted that the trial court never reached the merits of that issue, as it determined Aparicio had not met his burden of establishing

---

[2] In particular, the trial court heard evidence that "as part of OLS, 4,076 people had been arrested for misdemeanor offenses and not a single individual arrested was a woman." *Ex parte Aparicio*, 672 S.W.3d 696, 714 (Tex. App.—San Antonio 2023, pet. granted).

a prima facie case of selective prosecution on the basis of sex. *Id.* The court therefore reversed the trial court's denial of Aparicio's application for a writ of habeas corpus and remanded the matter to the trial court to "determine whether the State's discriminatory classification was justified" under both constitutional claims.[3] *Id.*

The Fourth Court of Appeals has since decided several cases involving OLS prosecutions of men. Recently, the court issued *State v. Gomez*, No. 04-22-00872-CR, 2023 WL 7552682 (Tex. App.—San Antonio Nov. 15, 2023, no pet. h.) (not designated for publication) involving a similar claim of selective prosecution on the basis of sex made in an application for a pretrial writ of habeas corpus by another male noncitizen (Gomez) who had been arrested in Kinney County for criminal trespass as part of OLS. In that case, the trial court issued the writ, held an evidentiary hearing, then granted the writ. *Id.* at *1. The State appealed, conceding it had only arrested males at the border under OLS, but arguing its discriminatory actions were justified based on: "(1) Governor Abbott's Proclamation declaring an emergency regarding border security; and (2) testimony that the counties implementing OLS do not have sufficient facilities to hold women detainees."[4] *Id.* at *5. The Fourth Court of Appeals rejected the State's argument, finding that although security at the border may be considered a compelling interest, the State did not demonstrate its actions were narrowly tailored to serve that interest. *Id.* The court noted OLS was a multi-billion-dollar operation, and the State did not explain why it could not have allocated funds

---

[3] The State filed a petition for discretionary review of the Fourth Court of Appeals' decision, which is currently pending. In the petition, the State argues the court erroneously concluded that Aparicio's claim was cognizable in a pretrial writ of habeas corpus.

[4] At the evidentiary hearing, Captain Joel Betancourt, who oversees the district in which participating OLS counties are located, testified that women were "always sent to immigration" because there was no "place to put them," as "the local county jails have no capacity." *State v. Gomez*, No. 04-22-00872-CR, 2023 WL 7552682, at *2 (Tex. App.—San Antonio Nov. 15, 2023, no pet. h.) (not designated for publication).

4

for a facility to hold women. *Id.* The court therefore held that the trial court did not abuse its discretion in "concluding the State failed in its burden of justifying its discriminatory conduct under strict scrutiny, as required by Texas's Equal Rights Amendment," and it affirmed the decision to grant the applicant his requested relief and dismiss his criminal case. *Id.*

### C. The issues before us

Here, the State does not deny Cayetano-Vazquez was the subject of selective prosecution, nor does it attempt to justify its discriminatory actions. The State's only argument on appeal is that the trial court lacked jurisdiction to hear Cayetano-Vazquez's application, contending that a claim of selective prosecution is not cognizable in an application for a pretrial writ of habeas corpus. We reject that argument in light of *Aparicio* and turn to the question of whether we have jurisdiction to hear Cayetano-Vazquez's appeal, and if not, whether we may treat his appeal as a petition for a writ of mandamus. And if treated as a mandamus petition, we must determine how that petition should be resolved.

### CAYETANO-VAZQUEZ'S CLAIMS ARE COGNIZABLE IN A PRETRIAL WRIT OF HABEAS CORPUS

We start with the State's argument that Cayetano-Vazquez's claim of selective prosecution was not cognizable in a pretrial writ of habeas corpus. The State argues "[n]ot only is there no legal authority supporting the ruling, to grant such claims cognizability would cause cascading problems for Texas' Courts." The State acknowledges, however, that the Fourth Court of Appeals rejected the same argument in *Aparicio*. And the State offers no new authority; it simply contends *Aparicio* was wrongly decided, and we should resolve the issue differently. We disagree on both fronts and follow the on-point precedent of the Fourth Court of Appeals. *See* TEX. R. APP. P. 41.3 (a transferee court must follow the precedent of the transferor court to the extent it conflicts with

its own; in the opinion, the deciding court may indicate "whether the outcome would have been different" had it "not been required to decide the case in accordance with the transferor court's precedent"); *see also Brazos Elec. Power Coop., Inc. v. Texas Comm'n on Env't Quality*, 576 S.W.3d 374, 382–83 n.6 (Tex. 2019) (an opinion issued by a transferor court remains binding precedent even though the case is pending on rehearing).

Accordingly, we conclude that Cayetano-Vazquez's claim of selective prosecution is cognizable in a pretrial writ of habeas corpus.

## THE TRIAL COURT'S ORDER IS NOT APPEALABLE

We must next consider whether Cayetano-Vazquez has a right to appeal the trial court's order denying his application for a writ of habeas corpus. We conclude he does not.

Whether a trial court's order denying an application for a writ of habeas corpus is appealable depends on whether the trial court ruled on the merits of the claim. An order denying an application for a writ of habeas corpus is only appealable when the trial court either grants or denies the relief requested in the application on its merits. *See Ex parte Villanueva*, 252 S.W.3d 391, 394 (Tex. Crim. App. 2008) (recognizing that except as provided by statute, only when "there is a ruling on the merits of the claims may a losing party appeal" from the denial of a writ of habeas corpus); *see also In re Perez*, No. 04-23-00294-CR, 2023 WL 5270488, at *2 (Tex. App.—San Antonio Aug. 16, 2023, no pet.) (mem. op., not designated for publication) (per curiam) (recognizing that an appeal is the proper remedy when a trial court denies an application for a writ of habeas corpus on the merits) (citing *Ex parte Sifuentes*, 639 S.W.3d 842, 846 (Tex. App.—San Antonio 2022, pet. ref'd) ("If the record shows that the trial court heard evidence and addressed the merits, the result is appealable.")).

6

In making a merits-based decision on an application for a writ of habeas corpus, a trial court generally issues the writ then considers evidence to determine whether it has merit and whether the requested relief should be granted. *See State v. Lara*, 924 S.W.2d 198, 203 (Tex. App.—Corpus Christi 1996, no pet.) (citing *Ex parte Noe*, 646 S.W.2d 230, 231 (Tex. Crim. App. 1983)); *see also* TEX. CODE CRIM. PROC. ANN. art. 11.01 ("The writ of habeas corpus is the remedy to be used when any person is restrained in his liberty. It is an order issued by a court or judge of competent jurisdiction, directed to any one having a person in his custody, or under his restraint, commanding him to produce such person, at a time and place named in the writ, and show why he is held in custody or under restraint.").[5] Thus, when a trial court refuses to issue a writ and does not issue a decision on the merits of the applicant's habeas claims, there is no right to appeal. *Ex parte Noe*, 646 S.W.2d at 231 (citing *Ex parte Moorehouse*, 614 S.W.2d 450, 451 (Tex. Crim. App. 1981) (recognizing that there is "no appeal from a refusal to issue or grant a writ of habeas corpus")); *see also In re Perez*, 2023 WL 5270488, at *2 (recognizing same in the context of an OLS challenge).

Despite the usual process, a court is not required to formally issue a writ before making a merits-based decision on an application for a writ of habeas corpus. *See Ex parte Villanueva*, 252 S.W.3d at 395 (recognizing that even when the trial court has not formally issued a writ, if the court rules on the merits, the trial court has "in effect, issued the writ"). And Cayetano-Vazquez argues that in his case, the court made a merits-based ruling on his habeas claim when it stated it "considered" the application and it was "denied," even though it did not formally issue a writ. We disagree.

---

[5] An applicant accused of committing a misdemeanor offense who has not been convicted of the offense may apply to the judge of the court in which the charge is pending. TEX. CODE CRIM. PROC. ANN. art. 11.09.

The trial court's order in Cayetano-Vazquez's case stated:

> ON this day came on to be heard the Application for Pretrial Writ of Habeas Corpus filed in the above entitled and number cause. The Court having considered same is of the opinion same should be:
>
> _x_  the Application is denied without hearing and the writ is not issued
>
> ___  the Application is granted, and an in-person hearing will be held on _____
>
> ___  the Application is granted, and the merits will be heard by submission of evidence . . .

Interpreting an order by the same trial court using virtually identical language in denying habeas relief to an applicant's challenge to his OLS prosecution, the Fourth Court of Appeals held that the trial court did not consider the merits of the applicant's habeas claims.[6] *In re Martinez-Jimenez*, No. 04-23-00547-CR, 2023 WL 7005866, at *2 (Tex. App.—San Antonio Oct. 25, 2023, no pet. h.) (mem. op., not designated for publication) (per curiam). And because the record did not otherwise suggest the trial court considered the merits of the applicant's habeas claims, the court found the trial court's decision was not merits-based. *Id.* at *2. We similarly conclude that the order in Cayetano-Vazquez's case reflects that the trial court did not issue the writ, hold a hearing, or consider the evidence Cayetano-Vazquez submitted in support of his habeas application.

Cayetano-Vazquez, however, correctly points out that we may consider the "entire record" in determining whether a trial court issued a merits-based ruling on a defendant's application for a writ of habeas corpus, and in turn whether the trial court's order is appealable. *See In re Martinez-Jimenez*, 2023 WL 7005866, at *2 (citing *Ex parte Sanchez-Hernandez*, Nos. 13-22-00120-CR, No. 13-22-00121-CR, 2023 WL 3749555, at *2 (Tex. App.—Corpus Christi June 1, 2023, no pet.)

---

[6] In *Martinez-Jimenez*, the trial court's order stated: "the Application is denied and the writ is not issued," omitting the term "without hearing." *In re Martinez-Jimenez*, No. 04-23-00547-CR, 2023 WL 7005866, at *2 (Tex. App.—San Antonio Oct. 25, 2023, no pet. h.) (mem. op., not designated for publication) (per curiam). We do not find this distinction sufficient to alter our interpretation of the order, as the order in Cayetano-Vazquez's case was identical in all other material respects. *Id.*

(mem. op., not designated for publication) (per curiam) ("We review the entire appellate record to make the determination of whether a court's denial is merit-based."); *Ex parte Bowers*, 36 S.W.3d 926, 927 (Tex. App.—Dallas 2001, pet. ref'd) (order and record may be considered to determine whether order was on the merits)); *see also Nichlos v. State,* 255 S.W.2d 522, 526 (Tex. Crim. App.1952) (appealability "is not to be determined alone from the form of the order entered, but the entire record may be looked to"). Cayetano-Vazquez finds it significant that the trial court issued a "Certification of Defendant's Right of Appeal" providing the right to appeal the "order denying application for pretrial writ of habeas corpus and for other ancillary matters." Cayetano-Vazquez then points to the appellate rules to argue that by confirming his right to appeal in the certification, the trial court confirmed that it reached the merits of his claims because only merits-based rulings are appealable. *See* TEX. R. APP. P. 25.2 (a)(2) (providing that a trial court must enter such a certification upon entering an appealable order). We disagree.

Cayetano-Vazquez has not cited any authority for the proposition that the certification, standing alone, demonstrates a trial court considered the merits of an application for a writ of habeas corpus, nor are we aware of any. To the contrary, a trial court's certification of the right to appeal is subject to appellate review, and the certification may be rejected if the record reflects that the certification is inaccurate. *See Jones v. State*, 488 S.W.3d 801, 804–05 (Tex. Crim. App. 2016) (recognizing that an appellate court is obligated to review a trial court's certification of the right to appeal to determine whether it is "contrary to the record and therefore defective"); *see also Gomez v. State*, No. 08-14-00007-CR, 2016 WL 3536407, at *3 (Tex. App.—El Paso May 31, 2016, no pet.) (not designated for publication) (recognizing court's obligation to review the record to determine whether trial court's certification of defendant's right to appeal is accurate).

Here, because the record does not otherwise suggest the trial court considered the merits of Cayetano-Vazquez's habeas claims, we find the certification of his right to appeal is contrary to the record and does not provide a basis for giving us jurisdiction to hear his appeal.[7] *See Gonzales v. State*, No. 08-13-00066-CR, 2021 WL 3556653, at \*3 (Tex. App.—Corpus Christi 2021, no pet.) (mem. op., not designated for publication) (when a certification of the right to appeal is defective, and there is no right to appeal, we do not have jurisdiction to hear the appeal); *see also Sherwood v. State*, 340 S.W.3d 929, 932–33 (Tex. App.—El Paso 2011, no pet.) (where trial court's certification of right to appeal did not accurately reflect the record, no right of appeal existed).

## WE TREAT THE APPEAL AS A PETITION FOR A WRIT OF MANDAMUS

Having concluded Cayetano-Vazquez has no right to appeal, we next consider whether we may treat his appeal as an original petition for a writ of mandamus. An appellate court may, in certain circumstances, treat an interlocutory appeal as a petition for writ of mandamus if requested to do so by the appellant. *See CMH Homes v. Perez*, 340 S.W.3d 444, 452–53 (Tex. 2011); *see also Hodge v. Kraft*, 490 S.W.3d 510, 517 n.2 (Tex. App.—San Antonio 2015, no pet.) ("the party seeking appellate review must specifically request that its appeal be treated as a mandamus petition"); *In re Commitment of Renshaw*, 672 S.W.3d 426, 427 (Tex. 2023), *reh'g denied* (Sept. 1, 2023) (recognizing that an appellate court may treat a petition for a writ of habeas corpus as a petition for a writ of mandamus when the appellant asks the court to do so, and appellate courts

---

[7] While Cayetano-Vazquez also finds it significant that the same trial court has provided written explanations for denying writ applications in other similar OLS cases—meaning that the court has found the applicants' habeas claims to be without merit and that they have the right to appeal—this does not demonstrate that the court intended to deny his claims on the merits, as no such written explanation appears in the record in his case. *See, e.g., Ex parte Barahona-Gomez*, No. 04-23-00230-CR, 2023 WL 6285324, at \*1 (Tex. App.—San Antonio Sept. 27, 2023, no pet. h.) (mem. op., not designated for publication) (finding trial court's order denying application for a pretrial writ of habeas corpus to be merits-based where trial court "explained its reasoning" in denying application).

10

have broad original jurisdiction to issue writs of mandamus pursuant to TEX. GOV'T CODE ANN. § 22.221(b)). It would be an unnecessary waste of judicial resources and the parties' time to require an appellant "to file a separate document with the title 'petition for writ of mandamus' listed on the cover where the party has expressly requested mandamus treatment of its appeal in an uncertain legal environment." *CMH Homes*, 340 S.W.3d at 453 (citing *Wagner & Brown, Ltd. v. Horwood*, 53 S.W.3d 347, 351 (Tex. 2001) (rejecting an "approach [that] catapults form over substance to deny appellate review on the merits")).

In his brief, Cayetano-Vazquez urges that, given the trial court's failure to hold a hearing and failure to otherwise allow the full development of the facts in support of his application for a writ of habeas corpus, we should remand the matter to the trial court "either by way of an order on appeal or mandamus." We find this sufficient to constitute a request that we treat his appeal as a petition for a writ of mandamus. And the State does not provide any reason why we should not do so. Accordingly, in the interest of judicial economy, we will treat it as such.[8] *Id.*; *see also Gruss v. Gallagher*, Nos. 14-21-00178-CV, 14-21-00179-CV, and 14-21-00180-CV, 2023 WL 1975016, at *14 (Tex. App.—Houston [14th Dist.] Feb. 14, 2023, no pet.) (treating appeal as a petition for a writ of mandamus where appellant expressly requested such relief and it was in the interest of judicial economy to do so).

## RESOLUTION OF THE MANDAMUS PETITION

Our final step in the analysis is to determine how to resolve the petition. In a similar situation, an applicant brought an application for a pretrial writ of habeas corpus, challenging his prosecution for criminal trespass under OLS on equal protection grounds. *In re Martinez-Jimenez*,

---

[8] Under the circumstances of this case, we have jurisdiction to consider the mandamus as a transferee court. *See* Government Code § 73.002(a) ("The court of appeals to which a case is transferred has jurisdiction of the case without regard to the district in which the case originally was tried and to which it is returnable on appeal.").

2023 WL 7005866, at *1. The trial court denied the application without issuing a writ and without deciding the merits of his selective prosecution claim prior to the *Aparicio* decision. *Id*. at *1–2. The applicant then filed an original petition for a writ of mandamus with the Fourth Court of Appeals asking it to order the trial court to issue the habeas writ and address the merits of his claims. *Id.*

In entertaining the petition, the Fourth Court of Appeals first noted that for "mandamus relief to be available in a criminal case, a relator must show two things: (1) that he has no adequate remedy at law, and (2) that what he seeks to compel is a ministerial act." *Id.* at *1 (quoting *In re Bonilla*, 424 S.W.3d 528, 533 (Tex. Crim. App. 2014)); *see also State ex rel. Young v. Sixth Jud. Dist. Ct. of App. at Texarkana*, 236 S.W.3d 207, 210 (Tex. Crim. App. 2007) (orig. proceeding). The court found there was no adequate remedy at law because the trial court did not rule on the merits of the relator's habeas claim, and as discussed above, he therefore had no right to appeal from the trial court's order denying his habeas application.[9] *Id.* at *2. The court further recognized that the ministerial-act requirement "is satisfied if the relator can show a clear right to the relief sought, which is shown when the facts and circumstances dictate but one rational decision under unequivocal, well-settled . . ., and clearly controlling legal principles." *Id.* at *1. (quoting *Bonilla*, 424 S.W.3d at 533) (internal quotation marks omitted).

The court found it significant that the trial court issued its order declining to entertain the writ before the *Aparicio* opinion was issued, and the relator's claims were similar (if not identical) to the claims made in *Aparicio*. *Id.* at *2 (citing *Aparicio*, 672 S.W.3d at 713). The court therefore found it appropriate to give the trial court "the opportunity to reconsider its decision not to issue

---

[9] The court also held that the relator's request for mandamus relief was not moot given that it did not grant the relief requested in his mandamus petition, i.e., issue a writ and decide the claims in his habeas application on the merits. *In re Martinez-Jimenez*, 2023 WL 7005866, at *1–2.

the habeas writ, hold an evidentiary hearing, or rule on the merits of Relator's application," in light of the holding in *Aparicio*. *Id*. (citing *Ex parte Lizcano*, No. WR-68,348-03, 2018 WL 2717035, at *1 (Tex. Crim. App. June 6, 2018) (not designated for publication) (per curiam) (remanding case to trial court, in light of new authority, "to allow it the opportunity to develop evidence, make new or additional findings of fact and conclusions of law, and make a new recommendation" to the Court of Criminal Appeals)); *see also In re Van Waters & Rogers, Inc.*, 988 S.W.2d 740, 741 (Tex. 1998) (orig. proceeding) (per curiam) (denying mandamus relief to allow trial court to reconsider decision in light of new precedent); *In re Cent. Oregon Truck Co., Inc.*, 644 S.W.3d 668, 669 (Tex. 2022) (orig. proceeding) (per curiam) (same). And the court therefore denied the relator's petition for writ of mandamus without prejudice to his "seeking relief, if necessary, after the trial court has had an opportunity to reconsider its ruling." *Id.* at *3.

We rule the same here.

## CONCLUSION

We remand to the trial court for it to consider Cayetano-Vazquez's application for a pretrial writ of habeas corpus on the merits in light of the Fourth Court of Appeals' holding in *Aparicio* and its progeny, and determine whether—at the time Cayetano-Vazquez was arrested and charged with criminal trespass—the State was applying the criminal trespass statute under Operation Lone Star in an unconstitutional manner by selectively prosecuting males only, without justification.[10]

---

[10] In his application, Cayetano-Vazquez states that law enforcement officers in Kinney County may have arrested two women for criminal trespass under OLS in February 2023, approximately one and a half years after his arrest in November 2021. On remand, however, the court may only consider evidence of the State's policy as it existed at the time of Cayetano-Vazquez's arrest in determining whether his constitutional rights were violated, and not evidence that the State may have changed its policy at a later date. *See Ex parte Barahona-Gomez*, No. 04-23-00230-CR, 2023 WL 6285324, at *2 (Tex. App.—San Antonio Sept. 27, 2023, no pet. h.). An applicant who was arrested and charged with criminal trespass while the discriminatory policy was in effect has already been treated "differently from similarly situated women on the basis of his sex by arresting and charging him" with trespass. *See Ex parte Aparicio*, 672 S.W.3d 696, 715 (Tex. App.—San Antonio 2023, pet. granted) (citing *Gonzales v. Police Dep't*, 901 F.2d 758, 762 (9th Cir. 1990) ("Curative measures simply do not tend to prove that a prior violation did not occur."); *Rich v. Martin*

13

We deny the petition for writ of mandamus without prejudice to Cayetano-Vazquez's ability to seek relief, if necessary, after the trial court has had an opportunity to reconsider its ruling.

LISA J. SOTO, Justice

December 12, 2023

Before Palafox, and Soto, JJ., and Marion, C.J. (Ret.)
Marion, C.J. (Ret.), sitting by assignment

(Do Not Publish)

---

*Marietta Corp.*, 522 F.2d 333, 346 (10th Cir. 1975) (explaining that conduct after the filing of charges "does not constitute cogent evidence of lack of prefiling discrimination" and if "taken into account at all, it might tend to show the existence of prior discrimination and an effort to repair the harm after discovery")).